805 F.2d 1001
 MICHIGAN ABRASIVE COMPANY, INCORPORATED, Plaintiff,
v.
Anne D. POOLE, Defendant-Counterclaim Plaintiff-Third-Party
Plaintiff-Appellee,
Ben C. Poole, et al., Defendants.
Michigan Abrasive Company, Inc., Michigan General
Corporation, Inc., Counterclaim-Defendants,
Third-Party Defendants,
Marsh & McLennan, Inc., Counterclaim-Defendant, Third-Party
Defendant-Appellant.
 No. 85-7782.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 10, 1986.
 
 William D. Cobb, Jr., Cowles & Thompson, G. Roland Love, Dallas, Tex., William B. Fernambucq, Huie, Fernambucq & Stewart, Birmingham, Ala., for Marsh & McLennan, Inc.
 Ferris S. Ritchey, Jr., Ritchey & Ritchey, P.A., Birmingham, Ala., for Anne D. Poole.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before HILL and FAY, Circuit Judges, and MORGAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This case involves a diversity action between Anne D. Poole, (hereinafter Poole), a sublessee of an industrial project, and Marsh & McLennan, Inc., (hereinafter appellant)--an insurance brokerage firm. Poole brought a third-party complaint against appellant seeking damages under several theories including negligent failure to procure insurance and breach of contract. The jury returned a general verdict in favor of Poole and the United States District Court for the Northern District of Alabama entered judgment in Poole's favor. Appellant now seeks reversal of the district court's denial of appellant's motion for judgment notwithstanding the verdict and alternatively for a new trial. For the reasons that follow, we affirm.
 
 BACKGROUND
 
 2
 In 1977, the Industrial Board of the City of Florence, Alabama, issued and sold $1,800,000 in bonds to finance the construction of a light industrial project located in tract "J" of the Florence--Lauderdale Industrial District. The project consisted of a plant building and adjacent structures, two storage buildings and two office buildings. In January of 1977, the project was leased to Michigan Abrasive Company, a wholly owned subsidiary of the Michigan General Corporation. Pursuant to an oral agreement, appellant acted as the insurance broker for Michigan General and wrote a manuscript policy insuring Michigan General's subsidiaries including Michigan Abrasive.
 
 
 3
 In February of 1981, Michigan Abrasive subleased the project to Anne Poole, the President of Ajax Industries. Poole simultaneously subleased the project to Ajax.
 
 
 4
 Under the terms of the Michigan Abrasive--Poole sublease, Poole was obligated to secure fire insurance covering the plant, all improvements and leased equipment.[1] Poole, however, elected to exercise an option in the sublease compelling Michigan Abrasive to maintain the required insurance and designate Poole as a named insured in consideration for annual prepayment of the premiums.[2] In February of 1981, Ajax tendered a check in the amount of $5,040 to Michigan General for insurance which, unknown to Poole, covered the real property only. The check was endorsed over to appellant and deposited in a trust account on February 18, 1981.
 
 
 5
 Pursuant to a request by Michigan General, appellant issued an endorsement on September 9, 1981, listing Ajax as an additional named insured. In addition, appellant received the portion of the Michigan Abrasive--Poole sublease specifying the property to be insured and the terms of the option.
 
 
 6
 A fire destroyed the main plant building on November 8, 1981. Ajax received $841,377.13 for the loss of the building. Because appellant procured insurance solely covering the real property, Poole was not indemnified for the destroyed leased equipment valued at approximately $194,000.00. Contrary to the terms of the Michigan Abrasive--Poole sublease, Poole was never designated as a named insured under the policy.
 
 
 7
 In January of 1982, Michigan Abrasive brought suit against Poole and others seeking, inter alia, damages caused by Poole's inability to make rental payments after the fire. Poole counterclaimed, seeking damages for Michigan Abrasive's failure to maintain the requisite insurance, failure to have Poole designated as a named insured, and mishandling of the premium. Poole also brought a third-party complaint against appellant seeking to recover for the loss of the leased equipment, for business interruption, and for loss of rent under a variety of legal theories.
 
 
 8
 All of the claims between Michigan Abrasive and Poole were settled and dismissed. The third-party claims brought by Poole against appellant went to trial. After all of the evidence was presented, the district court granted appellant's motion for a directed verdict on all counts except the alternate theories of breach of contract and negligence. The jury returned a verdict for Poole and assessed damages at $194,000.00 plus interest for a total of $228,000.00. The district court entered judgment for Poole. Appellant's motion for judgment notwithstanding the verdict was denied. Appellant's alleged grounds for reversal are predicated on the district court's denial of that motion.
 
 DISCUSSION
 I. JUDGMENT NOTWITHSTANDING THE VERDICT
 
 9
 In diversity cases, federal law governs the propriety of motions for judgment notwithstanding the verdict. Federal Kemper Life Assurance Co. v. First National Bank of Birmingham, 712 F.2d 459, 464 (11th Cir.1983). The standard regulating these motions is identical to the standard controlling motions for a directed verdict. Johnson v. Bryant, 671 F.2d 1276, 1279 (11th Cir.1982). As this court has observed:
 
 
 10
 [o]n motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.
 
 
 11
 Neff v. Kehoe, 708 F.2d 639, 641-42 (11th Cir.1983) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969)). Because the same substantive issues as matters of law must be addressed on appeal, reviewing courts must apply the same standard. Neff, 708 F.2d at 641.
 
 A. Ownership of the Destroyed Equipment
 
 12
 Appellant argues that the district court erred in refusing to grant judgment notwithstanding the verdict because "as a matter of law, the Michigan Abrasive--Poole sublease created no obligation to insure Poole's personal property." The property in question consisted of miscellaneous plant equipment used in the manufacturing process such as racks, tables, carts and cabinets, etc. Under the terms of the Michigan Abrasive--Poole sublease, Michigan Abrasive was not obligated under the option to obtain insurance covering personal property. Appellant asserts that the destroyed equipment was purchased by Poole and was not leased pursuant to the Michigan Abrasive--Poole sublease.
 
 
 13
 Because we find appellant's characterization of the equipment as personalty untenable as a matter of law, we conclude that the district court did not err in refusing to grant appellant's motion for judgment notwithstanding the verdict. Testimony at trial revealed that the bulk of the equipment was originally used by Michigan Abrasive and left on the premises when the project was subleased to Poole. The terms of the primary lease between the Industrial Development Board of the City of Florence and Michigan Abrasive provided that the board would retain title to the project including the plant and leased equipment until the bonds were retired. The bonds had not been retired at the time of the fire. We find that the issue of ownership of the equipment was submitted to and resolved by the jury. After reviewing the record, we conclude there was substantial evidence of such quality and weight that the jury could have reasonably concluded that the destroyed equipment was part of the project subleased by Poole. Appellate courts cannot reweigh evidence concerning questions of fact and substitute their judgment for that of the jury. See Lindsey v. American Cast Iron Pipe Co., 772 F.2d 799, 801 (11th Cir.1985); Hockett v. United States, 730 F.2d 709, 714 (11th Cir.1984). After reviewing the evidence, we are not left with the definite and firm conviction that an error occurred. See Taylor v. Hudson Pulp and Paper Corp., 788 F.2d 1455, 1459 (11th Cir.1986). Appellant cannot avoid the res judicata effect of the jury's findings by recharacterizing the issue as one of law and not of fact.
 
 B. Negligence
 
 14
 The district court instructed the jurors that Poole could recover for the destroyed equipment if they found that appellant breached a duty to procure insurance covering the property owed to Poole. The court charged the jury that the duty to provide such coverage could arise either by agreement or by voluntary assumption of the obligation. Questions of duty are controlled by state law. See Walden v. United States Steel Corp., 759 F.2d 834, 838 (11th Cir.1985). Since the jury returned a general verdict, Alabama law requires that this court affirm both of the theories presented to the jury in order to sustain its verdict. Walden, 759 F.2d at 838.
 
 
 15
 The first theory presented was negligence. The court instructed the jury as follows:
 
 
 16
 [w]here a party assumes the duty although he is not bound to do so, where he assumes a duty he becomes responsible for his actions. One who undertakes to perform a contract may be determined to owe a duty to others not privy to the contract to perform his obligations under the contract without injury to others. Such a duty may arise from the foreseeability that such others may be injured by negligent performance or the duty may arise from knowledge that others are relying on proper performance.
 
 
 17
 Dealing with matters requiring expert knowledge of business implies a duty to have such knowledge and an obligation to act in light of such knowledge. The duty of an insurance agent or broker requires that he, when undertaking to procure insurance for another, exercises reasonable skill, care and diligence in procuring the insurance. Where an insurance agent or broker with a view toward commissions undertakes to buy the required insurance in an agreement for another and unjustifiably or negligently fails to do so, he becomes liable for any damages resulting from it.
 
 
 18
 We note at the outset that appellant failed to object to these instructions. Thus, our inquiry on review concerning the substantive propriety of the charge is limited to whether the instructions were plainly erroneous. Puritan Insurance Co. v. Butler Aviation-Palm Beach, Inc., 715 F.2d 502, 504 (11th Cir.1983). After reviewing the applicable law, we find no such error with the charge.[3]
 
 
 19
 Second, there was evidence presented in this case to support the instruction. Testimony at trial established that appellant agreed to procure insurance for Michigan General, including its subsidiary Michigan Abrasive. Appellant undeniably continued to assume this duty after Michigan Abrasive subleased the project to Poole. The evidence shows that appellant received the relevant portions of the Michigan Abrasive--Poole sublease stipulating that the leased equipment was required to be insured and that the sublessee was supposed to be designated as a named insured. The record reflects that appellant failed to procure coverage for the leased equipment and did not arrange to have Poole listed as a named insured--all to Poole's detriment.
 
 
 20
 Based on these facts, a jury could reasonably find that appellant voluntarily assumed the duty of procuring insurance required by the sublease for the benefit of Poole, and that appellant failed to perform this duty proximately causing foreseeable injury. Because we conclude that there is "substantial evidence of such quality and weight that reasonable persons in the exercise of impartial judgment might reach different conclusions," we find that the negligence theory was properly submitted to the jury. Kaye v. Pawnee Construction Co., 680 F.2d 1360, 1364 (11th Cir.1982).
 
 
 21
 Third, concerning a related issue, appellant asserts that the negligence claim was not properly submitted because it was barred by the applicable statute of limitations.[4] Pursuant to Fed.R.Civ.P. 8(c), appellant plead this defense along with seventeen other affirmative defenses. Although appellant did not waive this defense in the pleading stages, we conclude that appellant has abandoned the defense by failing to advance it at trial. Affirmative defenses must be plead and proven. See In re Newton, 718 F.2d 1015, 1018 (11th Cir.1983), cert. denied, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); Johnson v. Smith, 696 F.2d 1334, 1338 (11th Cir.1983). As this court has acknowledged, "[t]he law is clear that, absent special circumstances, defenses not presented and for which proof is not offered in the trial court cannot be raised for the first time on appeal." Newton, 718 F.2d at 1018 (quoting Johnson, 696 F.2d at 1338).
 
 
 22
 In this case, a review of the record indicates that appellant failed to proceed with the defense after pleading it generally. Appellant never: (1) attempted to identify which statutes barred Poole's claims; (2) asked the court to rule on the merits of the defense as a matter of law before trial; (3) brought the issue to the attention of the court during trial; nor (4) asserted the defense in the motion for judgment notwithstanding the verdict. In effect, appellant voluntarily relinquished the defense by inaction. As indicated, this court will not address the merits of abandoned affirmative defenses on appeal.
 
 C. Breach of Contract
 
 23
 The second theory presented to the jury was breach of contract. The judge instructed the jury as follows:
 
 
 24
 [y]ou must determine whether there was an express or implied contract between the plaintiff and the defendant, or whether the plaintiff was the intended direct beneficiary of a contract between Michigan General or Michigan Abrasive and the defendant. If so, if the plaintiff shows that there was an express or implied contract or that she was the third-party beneficiary, as we call it in law, of a contract between Michigan General or Michigan Abrasive and Marsh and McLennan, she shows that, then she must show the terms and conditions of that contract; third, she must show that the defendant breached the contract in some way and specifically that the defendant breached the contract by failing to purchase the required insurance, and fourth, that she suffered damages as a result of that breach of contract.
 
 
 25
 Appellant did not object to the charge. After reviewing the applicable law, we do not find the instruction plainly erroneous.[5]
 
 
 26
 The evidence presented at trial established that an oral contract existed between Michigan General and appellant under which appellant was obligated to procure insurance for Michigan General and its subsidiaries. This contractual duty continued to exist with respect to the Michigan Abrasive subsidiary after the project was subleased to Poole. The undisputed facts show that appellant did obtain real property coverage upon the request of Michigan General for the benefit of Michigan Abrasive and its sublessees.
 
 
 27
 The controverted facts concerned the extent of appellant's contractual duty to procure insurance. Appellant argued that Michigan General determined the risks to be covered and that insurance for the leased equipment was never requested. In support of this contention, appellant offered the testimony of Charles Gabriel, a former manager of insurance and research for Michigan General.
 
 
 28
 Poole argued that appellant undertook to procure coverage for all of the risks required to be insured under the Michigan Abrasive--Poole sublease. The jury evidently rejected Gabriel's testimony and accepted Poole's factual assertion.[6] The credibility of witnesses and findings of fact where the evidence supports more than one conclusion are matters generally reserved for the fact finders and can only be reviewed to determine whether clear error occurred. See L & C Marine Transport, Ltd. v. Ward, 755 F.2d 1457, 1461 (11th Cir.1985), reh'g denied, 761 F.2d 698, cert. denied, --- U.S. ----, 106 S.Ct. 272, 88 L.Ed.2d 233 (1985); Robinson v. City of Fairfield, 750 F.2d 1507, 1510 (11th Cir.1985).
 
 
 29
 When no documents exist which might indicate the intent of contracting parties, the surrounding circumstances should be examined in order to determine whether the parties intended to directly benefit a third party. Federal Mogul Corp. v. Universal Construction Co., 376 So.2d 716, 724 (Ala.1979). After reviewing the surrounding circumstances in this case, we conclude there was substantial evidence of such quality and weight that the jury could reasonably conclude that appellant contracted with Michigan General to procure all of the insurance required under the sublease for the direct benefit of Michigan Abrasive's sublessees. Insurance covering the leased equipment was not obtained. Although Poole was not privy to the contract between appellant and Michigan General, Poole as a sublessee was certainly "within the class of persons for whose benefit the contract was intended." Costanza v. Costanza, 346 So.2d 1133, 1135 (Ala.1977). Thus, if the jury found that appellant breached its obligation to procure insurance, the jury could also have found that Poole was in a position to maintain an action. See Costanza, 346 So.2d at 1135.
 
 
 30
 Appellant argues that the district court erred in denying the motion notwithstanding the verdict because Poole did not offer evidence establishing the existence of an express or implied contract between appellant and Poole. In effect, appellant is attempting to persuade this court that the district court's instructions advance three separate breach of contract theories which must be individually supported by the evidence. Appellant has not succeeded in this endeavor. While we agree that the portions of the instruction regarding express and implied contracts were arguably unnecessary, we do not believe that including them in the charge requires reversal.
 
 
 31
 When reviewing jury instructions, appellate courts must consider the charge as a whole. Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir.1985). Viewed from the unique factual context of this case, we conclude that the instruction in question presents only one legal theory--breach of contract--and one factual inquiry concerning the specifics of the agreement allegedly breached. As appellant points out in its brief, Poole only advanced the third-party beneficiary theory at trial. Given the facts that the evidence supports the third-party beneficiary theory and that there is little if any possibility that the express and implied contract instructions prejudiced appellant, we conclude that any error which may have occurred is harmless and does not constitute grounds for either judgment notwithstanding the verdict or a new trial. See National Independent Theatre Exhibitors, Inc. v. Charter Financial Group, 747 F.2d 1396 (11th Cir.1984), reh'g denied, 755 F.2d 176 (1985), cert. denied, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985). A litigant is entitled to a fair trial--not a perfect one. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984). In addition, the appropriate time for appellant to raise objections to instructions for the first time is not on appeal. See Andres v. Roswell-Windsor Village Apartments, 777 F.2d 670, 674 (11th Cir.1985); Puritan Insurance Co., 715 F.2d at 504. This court will not allow appellant to revive an alleged instructional error which has not been preserved for appeal by recasting the claimed impropriety as an error by the court in submitting a theory to the jury.
 
 II. MOTION FOR NEW TRIAL
 
 32
 As an alternative to judgment notwithstanding the verdict, appellant made a motion for a new trial based on alleged insufficiency of the evidence. Such motions are directed to the sound discretion of the district court. McDonough Power Equipment, 464 U.S. at 556; Deas v. PACCAR, Inc., 775 F.2d 1498, 1503 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1658, 90 L.Ed.2d 201 (1986). After a careful review of the record we conclude that the district court did not abuse its discretion in denying appellant's motion for a new trial because as we have already determined, the jury's verdict could reasonably have been reached based upon the evidence presented.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 Sec. 6.5 of the sublease provided that the sublessee was obligated to obtain insurance covering:
 loss or damage to the Plant, all other improvements located on the site and the Leased Equipment by fire, lightning, vandalism and malicious mischief, with uniform standard extended coverage endorsement limited only as may be provided in the standard form of extended coverage endorsement at the time in use in the State of Alabama, to such extent as is necessary to provide (i) for full payment of the costs of repairing, restoring or replacing, the property damaged or destroyed or, if insurance to such extent is not available, to the extent of the full insurable value (as determined by a recognized insurer) of the Plant, such improvements and the Leased Equipment.
 
 
 [2]
 Sec. 6.5 of the sublease provided in pertinent part:
 [i]f the Sublessee so elects, the Company shall provide the insurance required herein and shall include the Sublessee as a named insured (as its interest shall appear). If the Sublessee so elects to have the Company provide such insurance, the premium shall be paid by the Sublessee to the Company annually in advance and shall be an amount equal to the Company's cost of providing such insurance....
 
 
 [3]
 We find the charge consistent with Alabama law regarding negligence. See Jones v. Newton, 454 So.2d 1345 (Ala.1984); Parker v. Thyssen Mining Const. Inc., 428 So.2d 615 (Ala.1983); Hall v. Dexter Gas Co., 277 Ala. 360, 170 So.2d 796 (1964)
 
 
 [4]
 Appellant contends that Ala.Code Sec. 6-2-39 (1977), which was arguably in effect at all times relevant to this case but has since been repealed and replaced in part by Ala.Code Sec. 6-2-38 (Supp.1986), as amended, provides a one-year statute of limitations for claims based on the negligent failure to procure insurance. In support of this contention appellant cites Armstrong v. Life Ins. Co. of Virginia, 454 So.2d 1377 (Ala.1984)
 
 
 [5]
 We find the charge consistent with Alabama law regarding third-party beneficiaries under a contract. See Mills v. Welk, 470 So.2d 1226 (Ala.1985); Federal Mogul Corp. v. Universal Constr. Co., 376 So.2d 716 (Ala.Civ.App.1979); Constanza v. Costanza, 346 So.2d 1133 (Ala.1977); Anderson v. Howard Hall Co., 278 Ala. 491, 179 So.2d 71 (1965)
 
 
 [6]
 The district court instructed the jury that if liability was imposed under a negligence theory they could not award more than the value of the equipment. The court further charged the jury that if liability was imposed under a breach of contract theory, they could award interest at six percent from the time that Poole became entitled to damages. Based on the fact that the jury awarded the total claimed value of the equipment plus interest, we can infer that liability was imposed under a breach of contract theory