**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**George BALMER and Margaret Balmer, Defendants.**

**Civ. A. No. 86-D-742-N.**

United States District Court, M.D. Alabama, N.D.

Nov. 4, 1987.

Michael B. Beers, with the law firm Miller and Beers, Montgomery, Ala., for plaintiff.

Dexter C. Hobbs, with the law firm of Copeland, Franco, Screws & Gill, Montgomery, Ala., for defendants George and Margaret Balmer.

## MEMORANDUM OPINION

DUBINA, District Judge.

This cause is now before the Court on the plaintiff's motion for judgment notwithstanding the verdict, said motion being filed herein on August 14, 1987. Pursuant to this motion, the plaintiff seeks an order from this Court setting aside the One Million Eight Hundred Thirteen Thousand Four Hundred Four and $^{90}/_{100}$ ($1,813,-404.90) Dollars judgment by jury verdict entered herein against the plaintiff/counterclaim defendant on August 5, 1987. As grounds for this motion, the plaintiff alleges, in essence, as follows: (1) The defendants/counterclaimants/insureds failed as a matter of law to prove that the plaintiff/insurer acted in bad faith in refusing to pay the defendants' claim for loss due to the burning of certain insured property, and this Court erred as a matter of law in allowing the defendants' claim for bad faith to be submitted to the jury; and (2) the defendants/counterclaimants/insureds failed to prove that the plaintiff/insurer breached any obligation or duty owed to the defendants under the subject policy of insurance. In support of its motion, the plaintiff filed a memorandum brief on September 3, 1987.

On September 14, 1987, the defendants filed herein their response in opposition to the plaintiff's motion for judgment notwithstanding the verdict. Pursuant to their response, the defendants contend that this Court did not err in submitting the claim for bad faith to the jury and sufficient evidence supports the jury's verdict against

the plaintiff for breach of contract and bad faith.

Having fully and carefully considered all of the above, as well as the applicable law and evidence produced at the trial of this cause, this Court is of the opinion that for reasons expressed below, the plaintiff's motion for judgment notwithstanding the verdict is due to be granted to the extent that said motion alleges that this Court erred as a matter of law in submitting to the jury the defendants' counterclaim for bad faith. Accordingly, the jury's verdict of bad faith against the plaintiff/insurer is due to be set aside and the judgment previously entered in this cause reduced in the amount of One Million Seven Hundred Sixty-Five Thousand and No/100 ($1,765,000.00) Dollars. In all other respects, the plaintiff's motion is due to be denied.

This Court has jurisdiction over this cause pursuant to Title 28 U.S.C. §§ 1332 and 2201. The plaintiff's motion for judgment notwithstanding the verdict is timely pursuant to Rule 50(b), *Fed.R.Civ.P.*

## I.  STATEMENT OF THE CASE

This is a declaratory judgment action, filed herein on August 1, 1986, in which the plaintiff, as the insurer of the defendants, sought a determination concerning certain rights and liabilities under a homeowner's insurance policy issued by the plaintiff to the defendants. The subject of this action involved a claim filed by the defendants pertaining to the said insurance policy which, being in full force and effect on April 13, 1986, insured the defendants' residence from loss due to fire and other such perils. On that date, a fire damaged and destroyed said insured property. The plaintiff contends that inasmuch as the defendants/insureds caused or procured the fire which destroyed the insured premises and intentionally concealed or misrepresented material facts and circumstances concerning the same, the subject insurance policy is void, and the plaintiff has no obligation or duty to satisfy the defendants' claim upon said policy.

On August 19, 1986, the defendants filed herein their answer to the complaint and included therein a counterclaim against the plaintiff for breach of contract. On December 31, 1986, the defendants amended their counterclaim so as also to allege the tort of bad faith against the plaintiff.

On July 27, 1987, this case was called for a trial by jury with both parties being represented by able counsel. At the close of the plaintiff's case-in-chief, the plaintiff moved this Court for a directed verdict on the counterclaims for breach of contract and bad faith. This motion was denied. At the close of all the evidence in the case, the plaintiff renewed its motion for directed verdict, and the defendants/counterclaimants filed herein their separate motion for a directed verdict on the counterclaims. This Court denied said motions to the extent that both sought directed verdicts on the counterclaim for breach of contract, but the Court reserved ruling upon the bad faith claim until after the case had been submitted to the jury. On August 3, 1987, the jury returned a verdict in favor of the defendants on their counterclaim for breach of contract and bad faith.[1] On August 5, 1987, this Court entered judgment against the plaintiff in accordance with the jury's verdict and assessment of damages in the amount of One Million Eight Hundred Thirteen Thousand Four Hundred Four and 90/100 ($1,813,404.90) Dollars; said amount representing Forty–Five Thousand Six Hundred Fifty and No/100 ($45,650.00) Dollars for the breach of contract claim, Two Hundred Sixty–Five Thousand and No/100 ($265,000.00) Dollars in compensatory damages, and One Million Five Hundred Thousand and No/100 ($1,500,000.00) Dollars in punitive damages for the bad faith claim.

## II.  STANDARD FOR A MOTION FOR JUDGMENT NOT-WITH STANDING THE VERDICT

Rule 50(b), *Fed.R.Civ.P.*, provides in pertinent part as follows:

---

**1.**  At such time, the Court orally denied all pending motions for a directed verdict.

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; ....

The standard which regulates a Rule 50(b) motion for judgment notwithstanding the verdict is well-established within this circuit. As recently observed by the United States Court of Appeals for the Eleventh Circuit:

[O]n motions for directed verdict and for judgment notwithstanding the verdict, the court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Michigan Abrasive Co., Inc. v. Poole*, 805 F.2d 1001 (11th Cir.1986), citing *Neff v. Kehoe*, 708 F.2d 639, 641–42 (11th Cir.1983) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1979)). *See also Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305 (11th Cir.1984); *Kaye v. Pawnee Constr. Co., Inc.*, 680 F.2d 1360 (11th Cir. 1982); and *Williams v. United Ins. Co. of America*, 634 F.2d 813 (5th Cir.1981). Stated otherwise, a moving party is entitled to a judgment notwithstanding the verdict when the Court is convinced that reasonable persons could not in light of the evidence have found the facts necessary to support the jury's verdict *or* that the facts properly found cannot in law support that verdict. *See Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). Having set forth the controlling rules and principles of law which apply to the instant motion, this Court must now apply the same to the evidence produced at the trial of this cause.

### III. DISCUSSION

A. *Contract Claim*.[2] The plaintiff/counterclaim defendant/insurer (hereinafter referred to as "State Farm") contends that based upon the evidence produced at the trial of this cause, reasonable men would agree that the defendants/counterclaimants/insureds (hereinafter referred to as the "Balmers") failed to prove by a preponderance of the evidence that State Farm breached any duty or obligation owed to the Balmers under the subject policy of insurance. This Court does not agree. Indeed, after having considered all of the evidence produced at the trial, this Court is of the opinion that there exists evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions on the issue of whether State

**2.** The record herein demonstrates that the instant contract claim does not concern those provisions of the subject policy of insurance providing the defendants insurance coverage for the premises itself. Instead, the contract claim pertains only to the coverage provided to the defendants for loss of contents. The maximum amount of coverage for the contents is $45,650.00.

Farm breached its contract of insurance with the Balmers. *See Michigan Abrasive*, 805 F.2d at 1004. Accordingly, State Farm's motion for judgment notwithstanding the verdict is due to be denied as to that part of the jury's verdict finding that State Farm breached its contract with the Balmers.

▆▆▆ In response to the Balmers' counterclaim for breach of contract, State Farm contends that the subject contract of insurance is void on grounds that the Balmers (1) caused, procured or participated in the fire which destroyed the insured premises on April 13, 1986; and/or (2) intentionally misrepresented to State Farm material facts or circumstances in violation of the policy. While it is well settled that either arson or misrepresentation of a material fact by an insured constitutes an absolute defense to an insured's claim for breach of contract,[3] this Court cannot find that there exist herein "facts and inferences [which] point so strongly and overwhelmingly in favor of [State Farm] ... that reasonable men could not arrive at a contrary verdict (*i.e.*, a verdict that State Farm did not breach any duty or obligation owed to the Balmers),...." *Michigan Abrasive*, 805 F.2d at 1004. Though this Court recognizes that in order to prevail on either an arson or misrepresentation defense under Alabama law an insurer need only prove by a fair preponderance of the evidence the elements of arson or misrepresentation,[4] a "preponderance of the evidence" is not the standard to be applied when considering a motion for judgment notwithstanding the verdict. As noted *supra*, the facts and inferences must point so strongly and overwhelmingly in favor of the plaintiff that reasonable men could not arrive at a contrary verdict. Having carefully considered all of the evidence in this case, this Court is not prepared to hold that such a great quantum of facts and inferences exists herein. Accordingly, it is the opinion of this Court that the jury's verdict as to the contract claim should not be disturbed.

**B.** *Bad Faith Claim.* As noted above, State Farm additionally contends that this Court erred as a matter of law in submitting the Balmers' claim for bad faith to the jury. State Farm argues that since it had a lawful basis (*i.e.*, an arguable or debatable reason) for refusing to pay the Balmers' claim, a tort action for bad faith refusal to pay is precluded as a matter of law. For reasons expressed below, this Court agrees that it erred in not granting State Farm's motion for directed verdict as to the Balmers' counterclaim for bad faith. Accordingly, State Farm is now entitled to an appropriate judgment notwithstanding the verdict.

Before examining that evidence which clearly demonstrates a lawful basis herein for State Farm's denial of the Balmers' claim for bad faith, the Court deems it necessary to first examine the evolution of the tort of bad faith refusal to pay a direct insurance claim in the State of Alabama. In *Chavers v. National Security Fire & Cas. Co.*, 405 So.2d 1 (Ala.1981), the Supreme Court of Alabama first recognized an actionable tort for an insurer's intentional refusal to pay a direct, first party claim. In *Chavers*, the Court held that there was implied by law a duty of good faith and fair dealing in contractual relationships. Bad faith was defined by the Court as "the intentional failure by the insurer to perform this duty implied in law." *Id.* at 5. The *Chavers* Court went on to hold that:

**3.** *See generally Mueller v. Hartford Ins. Co. of Alabama*, 475 So.2d 554, 557 (Ala.1985), *citing Hosey v. Seibels Bruce Group, South Carolina Ins. Co.*, 363 So.2d 751 (Ala.1978); *American Fire & Cas. Co., Inc. v. Archie*, 409 So.2d 854 (Ala.Civ.App.1981); *Long v. Insurance Company of North America*, 670 F.2d 930 (10th Cir.1982); and *Code of Alabama*, § 27–14–28 (1975).

**4.** Under Alabama law, an arson defense consists of the following elements: (1) competent and relevant evidence of arson by someone; (2) mo-

tive by the insured; and (3) unexplained surrounding circumstantial evidence implicating the insured. *See Great Southwest Fire Ins. Co. v. Stone*, 402 So.2d 899, 900 (Ala.1981). Concerning the defense of misrepresentation, an insurer need only prove that the insureds alleged misrepresentation was of a material fact and made with the actual intent to deceive. *See American Fire & Cas. Co., Inc. v. Archie*, 409 So.2d 854 (Ala.Civ.App.1981); and *Code of Alabama*, § 27–14–28 (1975).

[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.

*Id.* at 7. Accordingly, a two-tier test was established by which to determine whether an insurer had acted in bad faith in refusing to pay a direct claim on a policy of insurance.

In the cases since *Chavers*, the Supreme Court of Alabama has attempted to refine and clarify the *Chavers* test. In *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916 (Ala.1981), the Court observed the following:

The first tier of the test promulgated by Mr. Justice Embry and adopted by this Court in *Chavers* establishes that the tort of bad faith refusal to honor a direct claim arises when there exists "no lawful basis for the refusal coupled with actual knowledge of that fact." "No lawful basis," as expressed in that opinion, means that the insurer lacks a legitimate or arguable reason for failing to pay the claim. *See Michael v. National Security Fire & Cas. Co.*, 458 F.Supp. 128 (N.D.Miss.1978). That is, when the claim is not fairly debatable, refusal to pay will be bad faith and, under appropriate facts, give rise to an action for tortious refusal to honor the claim. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. "Coupled with actual knowledge of that fact" implies conscious doing of wrong. Bad faith, then, is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, [i.e., good faith and fair dealing, through some motive of self-interest or ill will]. The second tier of the test is an elaboration on the first. The trier of fact, by finding, on the part of the insurer, an "intentional failure to determine whether or not there was any lawful basis for refusal," *may use that fact as an element of proof that no lawful basis for refusal ever existed.* The relevant question before the trier of fact would be whether a claim was properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review. Implicit in that test is the conclusion that the knowledge or reckless disregard of the lack of a legitimate or reasonable basis may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured. *Of course, if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith.* Otherwise, the insurer's knowledge of the non-existence of any debatable reasons for refusal would be a question for the finder of fact, i.e., the jury. (Emphasis supplied.)

*Id.* at 924. Moreover, in the case of *National Security Fire & Cas. Co. v. Bowen*, 417 So.2d 179 (Ala.1982), the Supreme Court of Alabama further clarified the tort of bad faith refusal to pay by holding as follows:

[A]n insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. *Chavers v. National Security Fire Ins. Co.*, 405 So.2d 1 (Ala.1981). No lawful basis "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916 (Ala.1981). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. *Ibid.* Under those authorities, the plaintiff in a "bad faith refusal" case has the burden of proving:

(a) An insurance contract between the parties and a breach thereof by the defendant;

(b) An intentional refusal to pay the insured's claim;

(c) The absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) The insurer's actual knowledge of the absence of any legitimate or arguable reason; [and]

(e) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

In short, plaintiff must go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*Id.* at 183.

Following the decisions in *Chavers, Barnes,* and *Bowen,* the Court established what is known as the "directed verdict on the contract claim" standard in bad faith cases. Speaking for the Court in *National Savings Life Ins. Co. v. Dutton,* 419 So.2d 1357 (Ala.1982), Justice Shores stated:

[I]n the *normal* case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. *Ordinarily,* if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.

*Id.* at 1362. (Emphasis supplied.) The cases demonstrate that with the Court's articulation of this standard for the "normal" and "ordinary" claim for bad faith, the Court carved out a second standard to be applied to certain extreme, unusual or extraordinary claims for bad faith. As Chief Justice Torbert opined in his concurring opinion in *Dutton:*

[I] concur completely with the opinion and write separately to elaborate on one point. The opinion correctly prefaces the "directed verdict on the contract claim" standard with the words "In the *normal*

case"; and the phrase "if the evidence produced ... creates a fact issue ..." is preceded by the word *"Ordinarily."* These are significant qualifications. Certainly, extreme cases will arise in which a fact issue will present a jury question on that claim. This is not the case before us; and, absent such circumstances, the "directed verdict on the contract claim" is the applicable standard for testing the tort of bad faith claim.

*Id.* at 1362–63. (Emphasis supplied.) Perhaps the most instructive explanation of this second standard to be applied to extreme, unusual or extraordinary claims for bad faith, however, is found in Justice Jones' concurring opinion in *Safeco Ins. Co. of America v. Sims,* 435 So.2d 1219 (Ala.1983). Therein, Justice Jones stated as follows:

[T]his "directed verdict on the contract claim" test is not to be read as requiring, in every case and under all circumstances, that the tort claim be barred unless the trial court has literally granted [the insured's] motion for a directed verdict on the contract. Indeed, the words *"entitled* to a directed verdict" so indicate. Rather, this test is intended as an objective standard by which to measure [the insured's] compliance with his burden of proving that [the insurer's] denial of payment was without any reasonable basis either in fact or law; i.e., that [the insurer's] defense to the contract claim is devoid of any triable issue of fact or reasonably arguable question of law.

Exceptions to the "directed verdict" rule will undoubtedly arise. Take the case where the insurer insists that its refusal of payment was grounded solely on a particular entry in a hospital record, and plaintiff denies the very existence of such an entry. Merely because the insurer may be able to withstand a directed verdict motion—the existence *vel non* of the record entry itself being an issue of fact—would not, as a matter of law, bar the [insured's] tort claim. This extreme example is to be distinguished from the more normal situation in which the factual dispute centers around the reasonable, but conflicting, inferences

that may be drawn from a hospital record entry. If the entry in fact exists and one of the reasonable inferences of fact which may be drawn therefrom supports a legal basis for denial of the claim, [the insured] would not be entitled to a directed verdict on the contract claim; thus, the claimant would be barred from proceeding with his tort of bad faith claim, even though the issue of fact may be resolved adversely to the insurer and the contract benefits awarded to the insured.

*Id.* at 1224–25.

Finally, the Court in *Dutton* held that whether an insurance company is justified in denying a claim under a policy must be judged by what was before it *at the time the decision to deny the claim was made.* See *Dutton*, 419 So.2d at 1362. As subsequently noted by the Court in *Aetna Life Ins. Co. v. Lavoie*, 470 So.2d 1060 (Ala.1984):

> [T]he obvious reason for reviewing only the information and circumstances before the insurer at the time of the denial, is to view the conduct of the insurer within the factual framework existing at the time of its actions. To adjudge the existence *vel non* of bad faith in any other environment would be merely an exercise in judicial fiction.

*Id.* at 1071–72. The importance of this rule lies in the fact that if any one of the reasons for denial of coverage is at least "arguable," the tort claim for bad faith must fail and should not be submitted to the jury. *See McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 437 So.2d 86, 91 (Ala.1983).

In sum, the inquiry in a bad faith claim, whether pursued under the first or second tier of the tort as defined in *Chavers*, ultimately depends upon whether there is a debatable reason for denying the claim. This threshold determination of the existence or non-existence of a debatable reason is critical, since in the "normal" and "ordinary" case, the existence of a lawful basis (*i.e.*, an arguable or debatable reason) for denial of the insured's claim precludes, as a matter of law, the issue of bad faith from

being submitted to the jury. Apparently, the only exception to this rule involves cases which are not considered to be "normal" and "ordinary"; *e.g.*, where the existence of the insurer's lawful basis is itself a question of fact, *see Sims*, 435 So.2d at 1225 (Jones, J., concurring); *Jones*, 507 So. 2d at 400–01; or where the insurer, in an attempt to defeat the insured's motion for directed verdict on the contract claim, relies upon evidence which it has created itself in formulating the lawful basis for refusal to pay the insured's claim, *see, Lavoie*, 470 So.2d at 1072–74; *Carpenter v. Ford Motor Credit Co.*, 724 F.2d 977 (11th Cir.1984.)

Having now examined the controlling rules and principles of law of the tort of bad faith refusal to pay, this Court must consider whether, based upon the evidence produced at the trial of this cause, State Farm was entitled as a matter of law to have its motion for directed verdict granted as to the Balmers' counterclaim for bad faith. In its analysis of the evidence, this Court will focus upon the following questions: (1) Are the facts of the instant case indicative of that type of extreme, unusual or extraordinary fact situation which the Supreme Court of Alabama has recognized as constituting an exception to the normal and ordinary "directed verdict on the contract claim" standard; and (2) If not, does the evidence which was produced at trial demonstrate that at the time State Farm denied the Balmers' claim, State Farm had a lawful basis for doing so?

■ (1) *"Ordinary and Normal."* Suffice it here to simply say that after having fully and carefully considered all of the evidence produced at the trial of this cause, this Court declines to hold that the instant case is anything more than the "normal" and "ordinary" case to which the "directed verdict on the contract claim" standard is applicable. The evidence presented at trial fails to demonstrate any facts which are indicative of that type of factual situation which the Supreme Court of Alabama has heretofore identified as being extreme, unusual or extraordinary. Indeed, having reviewed and analyzed the few cases from

the Alabama Supreme Court which have been defined as being of an extraordinary nature, this Court finds that one or more of the following characteristics were present in each of the cases:

(1) In its attempt to defeat the insured's motion for directed verdict on the contract claim, the insurer relied upon evidence which [it] itself had created from sources within its own organization;

(2) The very existence *vel non* of the insurer's lawful basis for refusal to pay the defendant's claim is itself a question of fact; and

(3) The insurer failed to determine a lawful basis *prior to* denial of the defendants' claim.

*See, e.g., Sims,* 435 So.2d at 1225; *Lavoie,* 470 So.2d at 1070–72; *Jones,* 507 So.2d at 400–02; *Nationwide Mutual Ins. Co. v. Clay,* 21 A.B.R. 3690 (Ala.1987). *See also Carpenter v. Ford Motor Credit Co., supra.* This Court finds none of these characteristics present in the instant case. Rather, the evidence clearly demonstrates that this case is "the more normal [and ordinary] situation in which the factual dispute centers around the reasonable, but conflicting, inferences that may be drawn from [the evidence]." *Safeco,* 435 So.2d at 1225 (Jones, J., concurring). Accordingly, this Court is of the opinion that the "directed verdict on the contract claim" standard is applicable herein.

(2) *Lawful Basis.* As discussed above, the law of the tort of bad faith in the State of Alabama is clear on the matter that if a lawful basis for the insurer's denial of the claim existed at the time of denial, the insurer cannot, as a matter of law, be liable for bad faith. And as further discussed above, in the normal and ordinary case, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.

Herein, State Farm has asserted (1) arson and/or (2) misrepresentation after the fact (*i.e.,* inflation of the contents inventory) as lawful bases for its refusal to honor the Balmers' claim under the policy. As to each of these defenses, this Court is of the opinion that the evidence produced at trial *clearly* demonstrates a fact issue with regard to the validity of the Balmers' claim under the policy. In other words, there exists herein conflicting evidence as to whether the Balmers' claim under the policy is invalid on grounds of arson and/or misrepresentation after the fact. Given such conflicting evidence, the "directed verdict on the contract claim" standard dictates that the Balmers' claim for the tort of bad faith should not have been submitted to the jury. *See Dutton,* 419 So.2d at 1362.

■ Due to the clear, obvious and blatant conflicts in the evidence concerning the issue of whether the Balmers' claim under the policy was invalid on grounds of arson or misrepresentation, this Court declines to set forth a detailed exposition of the evidence which was produced during the six-day trial of this cause. Indeed, at first glance, it appears that a detailed examination of the evidence is not necessary since, pursuant to the "directed verdict on the contract claim" standard, the fact that conflicts exist in the evidence with regard to the validity of the Balmers' claim dictates that the issue of bad faith must fail. Notwithstanding the great amount of evidence (contradicted as it may be) that was produced at the trial, the evidence demonstrates at the very least that at the time of the denial of the Balmers' claim, State Farm had knowledge of the following facts:

(1) The Balmers (a family of eight) were in poor financial condition with debts well exceeding $100,000.00, a monthly debt service which exceeded any source or sources of income reported by the insureds, and an average annual income of only $6,000 to $10,000 for the two years immediately preceding the fire;[5]

---

**5.** An insured's poor financial condition is competent evidence of a motive for the insured's willful burning of the insured premises. *See, e.g., Fondren v. Allstate Ins. Co.,* 790 F.2d 1533

(11th Cir.1986); *Crown Colony Distributors, Inc. v. United States Fire Ins. Co.,* 510 F.2d 544, 545 (5th Cir.1975).

(2) The Balmers were in arrears on their mortgage indebtedness for the insured property in the amount of $50,774.11;

(3) The credit record of the Balmers with their mortgagee, the Farmers Home Administration, demonstrated that the Balmers had a history of arrearage and delinquency in their payments;

(4) On April 9, 1986, four days before the subject fire, a meeting was had between the Balmers and representatives of the FMHA at which the insureds were informed that a recommendation would be made to deny all attempts to reorganize or refinance their mortgage indebtedness, with foreclosure being the ultimate result;

(5) The Balmers "second" home and business located in Troy, Alabama, were for sale;

(6) During the year immediately preceding the fire, the Balmers had executed over 100 insufficient funds checks at charges of $8.00 per check;

(7) The report, conclusions, opinions and physical evidence gathered by Mr. Jack Kiser, an independent cause and origin expert, who was hired by State Farm to conduct a cause and origin investigation into the subject fire.[6] Mr. Kiser concluded, *inter alia*, that based upon his investigation into this matter, as well as his experience in arson investigation, recognition and detection,[7] the subject fire was of an incendiary origin. Mr. Kiser further concluded that based upon his findings from the physical inspection of the fire scene (two days following the fire), and subsequent comparison with the contents inventory submitted by the Balmers, the latter was inflated;

(8) The report, conclusions, opinions and information obtained by Johnny Locke, State Farm's investigator assigned to this case. Mr. Locke's investigation revealed, *inter alia*, that defendant George Balmer was the last person to leave the insured premises prior to the discovery of the fire[8] and, upon leaving, Mr. Balmer locked and secured a gate providing access to the road leading to the insured premises; there was no evidence of forcible entry (other than by fire fighters) to the premises and the insureds possessed the only keys to the same; when Mrs. Balmer left the insured premises on the evening of the fire, she took with her to the insureds' "small" home in Troy fourteen baby ducks, two dogs, and the insureds' six children; the fire was discovered at approximately 8:00 p.m., an hour or so subsequent to the time that defendant George Balmer had been in the vicinity of the insured premises;[9] Mr. Locke's

---

**6.** Proof of investigation and analysis of the ruins of the burned property is competent evidence to determine the cause of a fire loss. *See, e.g., Jones v. Alabama Farm Bureau Mut. Cas. Co.,* 507 So.2d 396, 401 (Ala.1987); *Don Burton, Inc. v. Aetna Life and Cas. Co.,* 575 F.2d 702 (9th Cir.1978).

**7.** The evidence at trial demonstrated that Mr. Kiser is well qualified in the fields of arson investigation, recognition and detection. Mr. Kiser was a member of the Fire Department for the City of Mobile, Alabama, for twenty-six years. He has also been a member of the Bureau of Fire Prevention for twelve years and has investigated the cause and origin of numerous fires since 1972. In 1976, Mr. Kiser was instrumental in forming the Arson Squad for the City of Mobile Fire Department and was employed therein as the investigator in charge. In addition to having attended numerous arson seminars through the country, Mr. Kiser has completed the basic course in arson investigation at the National Fire Academy as well as the instructor's courses in arson recognition and detection at the National Fire Academy. He has also served as an instructor in arson recognition at the Alabama Fire College and Police Academy. Mr. Kiser has been recognized as an expert in arson investigation in both state and federal courts. There is no dispute that he was the only duly-qualified expert to perform any investigation into the cause and origin of the subject fire prior to the plaintiff's denial of the instant claim.

**8.** Proof that the insured was the last person to leave the property before its destruction, or that the insured had access to the premises, i.e., a key or his presence nearby, is competent evidence of the "opportunity" element of the arson defense. *See Great Southwest Fire Ins. Co. v. Stone,* 402 So.2d 899, 900–01 (Ala.1981); *Fondren v. Allstate Ins. Co.,* 790 F.2d 1533, 1535 (11th Cir.1986).

**9.** It is important to note here that based upon Mr. Kiser's investigation into this matter as well as his experience and expertise in arson investigation and fire behavior, he concluded that the instant fire had burned for approximately an

investigation also revealed the poor financial condition of the insureds, which included, in addition to the mortgage held by the FMHA, at least three commercial loans from ·Trans–South Financial Services;

(9) The Balmers had represented to State Farm via sworn statements that during the year prior to the fire they had purchased in excess of $23,000.00 worth of contents for the subject residence and had received over $9,000.00 in gifts; the Balmers further represented to State Farm that though they lived at the subject premises only on the weekends and during the summer months, the insured premises contained over $8,500.00 worth of books and magazines, $12,700.00 in jewelry, $31,000.00 in clothing, and $7,600.00 in art;

(10) Andrew Wackerly, an agent of the FMHA, stated that based upon his inspection of the subject premises shortly before the date of the fire, there appeared to be minimal contents, "... as if the insureds were merely camping out" in the residence; and

(11) The subject policy of insurance was due to expire the day following the fire.

Given these facts which were known to State Farm at the time of the denial of the Balmers' claim, this Court is of the opinion that State Farm had adequate evidence to deny the claim on grounds of arson and/or misrepresentation of the contents inventory. *See Haynes v. Allstate Ins. Co.*, 749 F.2d 1474 (11th Cir.1985). At the very least, State Farm was entitled to debate or argue the issue. Since arson and/or misrepresentation are in and of themselves lawful bases upon which to deny a claim, *see* n. 3, *supra,* State Farm cannot, as a matter of law, be found to have acted in bad faith.

■ The Balmers have contended in this cause quite vehemently that State Farm is guilty of bad faith for having failed to *properly* and *objectively* investigate the cause and origin of the subject fire and their motive and opportunity to commit ar-

son or misrepresent material facts to State Farm. The Balmers place special emphasis on the words "proper investigation" since, according to the Balmers' version of the evidence, State Farm either intentionally, recklessly or negligently (1) failed to follow certain in-house rules, regulations and procedures concerning the investigation of a fire loss; and (2) failed to perform certain tasks or carry-out certain functions which various experts in the field of arson investigation claim are necessary for a proper cause and origin investigation. In support of their position, the Balmers rely heavily upon the *Lavoie* case to support their proposition that the tort of bad faith refusal to pay may be sustained upon evidence that the insurer failed to consider all facts available to it or failed to act according to its own established rules and procedures. In this Court's opinion, such a proposition is a misstatement of the law.

To begin with, the law of the State of Alabama is clear that a bad faith claim, whether pursued under the first *or* second prong of the tort as defined in *Chavers,* ultimately depends upon whether there is a debatable reason for denying the claim. *See Jones,* 507 So.2d at 402 (Torbert, C.J., concurring). Although the insured can use the intentional failure to determine whether or not there was any lawful basis for refusal of the claim (i.e., tier two of the *Chavers* test) as evidence that no lawful basis for refusal ever existed, the fact remains that in order for the insureds to recover on the tort of bad faith, *no lawful basis ·must exist* for the insurer's denial of the claim. *See Barnes,* 405 So.2d at 924; and *Lavoie,* 470 So.2d at 1082 (Torbert, C.J., dissenting). In other words, an insurer's intentional, reckless or negligent failure to investigate or evaluate a claim is only *an element* by which the insured may prove that no lawful basis for refusal existed. The insurer's "subpar" investigation cannot in and of itself sustain a tort action for bad faith. This .much is clear from Chief Justice Torbert's observation that:

hour or so before being discovered. Thus, additional evidence exists which tends to demon-

strate that defendant George Balmer had the "opportunity" to cause the fire.

[T]he focusing of the inquiry in bad faith claims on whether there is a debatable reason for denying the claim and generally away from the conduct of the insurer in investigating and evaluating the claim does not mean the law condones an insurer's conduct in not properly investigating and evaluating the claim. [Instead, the focus of the inquiry] stems from the recognition that without a threshold determination that the insurer had no debatable reason for denying the claim, the insured was in essence not injured for the insured had no right to immediate payment of the claim. (Footnote omitted.) *No matter how badly the insurer acted in investigating and evaluating the claim, if there was a debatable reason for refusing to pay the claim, when payment was refused, the insured was not entitled to prompt payment. If a debatable reason exists, the insurer has the "freedom (and, perhaps, the duty) not to honor, and thus legally dispute, claims of questionable validity."* *Chavers I* at 6 (quoting from Justice Jones' special concurrence in *Vincent* [*v. Blue Cross–Blue Shield of Alabama* ], 373 So.2d 1054 (Ala.1979)). The lack of proper investigation and evaluation is significant in proving [the crucial] element of the tort, namely *knowledge* by the insurer of the lack of a debatable reason. *Barnes* at 924.

*Lavoie,* 470 So.2d at 1083 (Torbert, C.J., dissenting). *See also Prudential Ins. Co. v. Coleman,* 428 So.2d 593 (Ala.1983), which illustrates that it is the existence or non-existence of the debatable reason that is critical to the bad faith claim and once such is determined to have existed at the time the insurer denied the claim, questions of whether the claim was properly investigated and evaluated are moot.

■ Secondly, assuming arguendo that an insurer's failure to follow its own in-house rules, regulations, procedures or guidelines could constitute in and of itself a finding of bad faith on the part of the insurer, there is no direct evidence in the instant case that State Farm failed to follow any in-house *requirements* in investigating the defendants' claim. Though inferences and arguments do exist to the contrary, it is not the function of this Court to weigh such inferences on a motion for judgment notwithstanding the verdict. Accordingly, the evidence does not support the conclusion that State Farm's alleged failure to follow its own established rules and procedures for investigating a fire loss, makes the customary "directed verdict on the contract claim" inapplicable.[10]

By finding, as a matter of law, that an insurer's alleged negligent or hapless investigation and evaluation of a claim will not sustain a tort action for bad faith refusal to pay, this Court is not saying or even implying that State Farm's investigation and evaluation herein passes muster. To the contrary, this Court is distressed by the manner in which State Farm conducted its investigation of the subject fire loss. Though this Court recognizes that once the insurer establishes a debatable basis for denying a claim it has no affirmative duty to investigate further, *see National Security Fire & Cas. Co. v. Vintson,* 454 So.2d 942, 945 (Ala.1984) (citing *Dutton, supra* ), yet this Court shudders to think that State Farm is leaving relevant and useful evidence unexplored in its investigation of fire losses. For example, the undisputed evidence herein demonstrates that State Farm failed to interview the Balmers or the fire fighters; State Farm failed to obtain a copy of the fire department's report; and State Farm failed to sift the remains of the burned property in an effort to verify the contents inventory. While this Court is certainly in no position to judge what constitutes generally accepted procedures in the investigation of a fire loss, the evidence presented at the trial of this cause demonstrated that these are tasks commonly performed in cause and origin investigations. Notwithstanding what this Court considers to be an unsatisfactory performance, how-

---

**10.** The Court notes that in *Lavoie,* the evidence demonstrated that the in-house procedure which the insurer had failed to follow was indeed a *requirement* to be satisfied before making a determination on a claim. A close reading of the *Lavoie* case reveals that this is the reason why the court refused to apply the "directed verdict on the contract claim" standard therein.

ever, the fact remains that the evidence in this case demonstrates that *at the time the Balmers' claim was denied,* State Farm had a lawful basis for doing so. Thus, this Court erred in allowing the Balmers' counterclaim for bad faith to be submitted to the jury.

### IV. CONCLUSION

In sum, this Court is of the opinion that regardless of the imperfections surrounding State Farm's investigation of the Balmers' claim, the Balmers have received all they are entitled to under the law. By returning a verdict in favor of the Balmers on their counterclaim for breach of contract, the jury in this cause obviously found that State Farm had failed to prove by a preponderance of the evidence that the subject contract of insurance was invalid on grounds of arson and/or misrepresentation of the contents inventory. Since sufficient evidence exists to support the jury's verdict on the Balmers' counterclaim for breach of contract, this Court refuses to disturb that verdict.

For reasons expressed hereinabove, however, this Court is of the opinion that it erred as a matter of law in allowing the Balmers' counterclaim for bad faith to be submitted to the jury. The evidence presented at the trial of this case failed to demonstrate a breach of State Farm's duty to use good faith and fair dealing in evaluating the Balmers' claim. As Justice Jones recognized at an early stage in the formation of Alabama's version of the tort of bad faith:

> [T]he reasonable expectations of parties to an insurance contract contemplate a broad range of freedom on the part of the insurer to evaluate claims submitted thereunder and to decline payment in non-meritorious cases. The corresponding duty to use diligence in the review and prompt payment of meritorious claims is contractually bargained for and *the law need not impose a further duty to enforce its negligent breach.* Similar-

ly, this freedom (and, perhaps the duty) not to honor, and thus legally dispute, claims of questionable validity in accordance with the terms of the contract is effectively denied if the law imposes so high a duty of faithful performance as to pose a threat of increased risk in the event the dispute is ultimately resolved adversely to the insurer. (Emphasis added.)

*Vincent v. Blue Cross–Blue Shield of Alabama,* 373 So.2d 1054, 1064 (Ala.1979) (Jones, J. concurring). This Court is of the opinion that the evidence presented in this case does not demonstrate a refusal to pay in accord with a dishonest purpose, or some motive of self-interest or ill-will. Accordingly, the Balmers have no viable claim for bad faith. State Farm is entitled, as a matter of law, to a judgment notwithstanding the verdict on the bad faith claim.

A separate order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion filed contemporaneously herewith, it is the

ORDER, JUDGMENT and DECREE of the Court that State Farm Fire & Casualty Company's motion for judgment notwithstanding the verdict filed herein on August 14, 1987, be and the same is hereby GRANTED to the extent that this Court's judgment filed herein on August 5, 1987, be and the same is hereby SET ASIDE and held for naught as to the bad faith claim. It is further

ORDERED that judgment on the bad faith claim be entered in favor of State Farm Fire & Casualty Company and against George Balmer and Margaret Balmer.[1] It is further

ORDERED that in all other respects State Farm Fire & Casualty Company's motion for judgment notwithstanding the

---

1. The effect of this Order and Memorandum Opinion is that the judgment heretofore entered by this Court on August 5, 1987, is reduced in the amount of One Million Seven Hundred Sixty-Five Thousand and No/100 ($1,765,000.00) Dollars.

verdict be and the same is hereby DE-NIED.