Ronald KINER, Appellant,

v.

RELIANCE INSURANCE COMPANY, Appellee.

No. 89–744.

Supreme Court of Iowa.

Nov. 21, 1990.

Barry J. Nadler of Newbrough, Johnston, Brewer, Maddux & Nadler, Ames, for appellant.

Jack W. Rogers, West Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and NEUMAN, JJ.

LARSON, Justice.

When the workers' compensation carrier for Ronald Kiner's employer denied Kiner's workers' compensation claim, Kiner sued it for bad-faith failure to pay and for slander. He recovered substantial verdicts on both theories, but the district court ordered a new trial on his bad-faith claim and a remittitur on his claim for slander. Kiner appealed, and Reliance cross-appealed. We affirm in part, reverse in part, and remand on the appeal and affirm on the cross-appeal.

In 1970, Kiner fell while on the job as a carpenter, injuring his back. Reliance Insurance Company, the workers' compensation carrier, paid him benefits for a permanent partial disability. From 1972 to 1980, Kiner took pain medications for back problems related to the injury and, despite its periodic objections, Reliance paid for these medications. Kiner testified that he stopped using these medications in December 1980, but his pain persisted. In November 1981, and twice afterward, he obtained "single" prescriptions (apparently a week's supply each time) for pain medi-

cations. Kiner submitted the prescription bills to Reliance, which refused payment on the ground that Kiner had a drug dependency problem. Reliance also requested that Kiner have a chemical dependency evaluation.

In June 1985, Kiner filed an action against Reliance for bad-faith failure to pay workers' compensation benefits. In 1988, he amended his petition to allege a claim of slander against Reliance for wrongfully stating that Kiner was addicted to drugs. Reliance eventually paid the workers' compensation benefits.

Following trial, the jury awarded Kiner $75,000 in actual damages and $550,000 in punitive damages on the bad-faith claim. On the slander claim, it awarded him $75,000 actual and $150,000 punitive damages.

In response to Reliance's posttrial motions, the court ordered a new trial on all issues in the bad-faith case,[1] finding the $550,000 punitive damage award to be excessive. On the slander claim, the court found that the award of compensatory damages was excessive and ordered a new trial on the slander claim unless Kiner would consent to a $25,000 remittitur. The trial court left in place the verdict for $150,000 in punitive damages in the slander case. Kiner appealed. Reliance cross-appealed, claiming that the court erred in submitting the bad-faith claim.

I. *The Bad–Faith Claim.*

We first address Reliance's cross-appeal argument that the court erred in submitting the bad-faith claim to the jury. Reliance argues that (1) the court lacked subject matter jurisdiction because the industrial commissioner has exclusive original jurisdiction of workers' compensation issues, and (2) the merits of the workers' compensation claim were "fairly debatable" as a matter of law.

■ A. *The jurisdiction issue.* Reliance's argument that the district court lacked subject matter jurisdiction is based

---

1. The district court found the actual damages on the bad-faith claim were not excessive; nevertheless, it ordered a new trial on all issues, including liability and compensatory damages,

citing *Bankers Life & Casualty Co. v. Kirtley,* 307 F.2d 418, 422 (8th Cir.1962). The scope of retrial is not raised as an issue by Kiner.

on the exclusive-remedy provision of the Workers' Compensation Act. *See* Iowa Code § 85.20 (1985). In *Tallman v. Hanssen*, 427 N.W.2d 868 (Iowa 1988), the trial court read the worker's suit against the insurance company as one seeking payment for medical bills, a matter solely within the jurisdiction of the industrial commissioner. The court accordingly dismissed the petition. We reversed, concluding that, when the petition was considered as a whole, it alleged a bad-faith claim, a matter not within the exclusive jurisdiction of the industrial commissioner.[2] We said:

> It is axiomatic that an employee's rights and remedies arising from an injury suffered in the course of employment are exclusively provided under Iowa Code chapter 85. *See* Iowa Code section 85.20 (1987). A district court would ordinarily have no subject matter jurisdiction over a claim that an employee is entitled to workers' compensation benefits. But this exclusivity principle is limited to matters surrounding a job-related injury and does not extend to subsequent dealings during which a tort may arise by reason of bad faith on the part of an employer's insurer.

*Id.* at 870. *Tallman* controls on this issue, and we agree with the district court that it had jurisdiction of the bad-faith claim.

■ B. *The "fairly debatable" issue.* Reliance argues that Kiner's bad-faith claim should not have been submitted to the jury because, as a matter of law, it was "fairly debatable" whether Reliance was obligated to pay Kiner's claim.

To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

**2.** Reliance does not question whether an action for bad-faith failure to pay a workers' compensation claim is recognized in Iowa, although we have never expressly ruled on the issue. In *Tallman,* we held in effect that, if such an action is recognized, it is not within the exclusive jurisdiction of the commissioner. The viability of the claim itself was not raised, and we did not address it. 427 N.W.2d at 871. That issue

*Dolan v. Aid Ins. Co.,* 431 N.W.2d 790, 794 (Iowa 1988) (quoting *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 691, 271 N.W.2d 368, 376 (1978)). We further said that

> [w]here a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law.

*Id.* As the Wisconsin court said in *Anderson,* "the knowing failure to exercise an honest and informed judgment constitutes the tort of bad faith." 85 Wis.2d at 692, 271 N.W.2d at 377. We believe that a reasonable fact finder could find that Reliance failed to "exercise an honest and informed judgment" on Kiner's claim, and thus could conclude that its denial was not fairly debatable. The issue was therefore one for the jury, not for the court as a matter of law.

C. *Elements of the bad-faith claim.* Reliance complains that the trial court's instruction incorrectly stated the elements of a bad-faith claim. Instruction 13 stated that the plaintiff must prove:

> 1. That there is no reasonable basis for denying or delaying payment of benefits;
>
> 2. That Defendant knew or *should have known* that there was not a reasonable basis for denying payment . . . .

(Emphasis added.)

■ *Dolan* states that bad faith involves an insurer's "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." 431 N.W.2d at 794. This, Reliance claims, introduces an element of intent which is not found in Instruction 13. *See Anderson,* 85 Wis.2d at 691, 271 N.W.2d at 376 ("It is apparent . . . that the tort of bad faith [failure to settle] is an intentional one. 'Bad faith' by definition cannot be unintentional."). Bad faith,

is not raised in the present case either, and we do not pass on it. Such a claim has, however, been recognized in other jurisdictions. *See* 2A A. Larson, *Workmen's Compensation* § 68.34(c), at 13–138 n. 49.20 (1989); Annotation, *Tort Liability of Workers' Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due,* 8 A.L.R.4th 902 (1981 & Supp.1990).

it is said, suggests deceit, through strategy and wile. *Id.*

■ It is not clear what "reckless disregard" means in the context of bad-faith claims, although we see it in connection with defamation law, *e.g., New York Times Co. v. Sullivan,* 376 U.S. 254, 279, 84 S.Ct. 710, 725, 11 L.Ed.2d 686, 706 (1964), and in tort law regarding the safety of others. *See, e.g.,* Restatement (Second) of Torts § 500 (1965). Drawing an analogy to reckless disregard under this section of the Restatement, we believe that reckless disregard for purposes of a bad-faith claim would exist if an insurer knows or has reason to know that it has no basis for denying the claim but does so anyway. *Cf.* Restatement (Second) of Torts § 500 (reckless disregard for safety of others found if person acts or fails to act "knowing or having reason to know" of unreasonable risk to another).

■ Despite the reference to reckless disregard in *Dolan* and *Anderson,* and despite the similarities that this concept shares with the elements of the bad-faith claim in the sense that the actor knew or should have known of the consequences of his act, we do not believe that reckless disregard is a necessary element in a bad-faith claim. It is sufficient to show that the insurer denied the claim knowing or having reason to know that its denial is without basis. Substantially the same instruction as that given in this case was approved by the Texas Supreme Court in *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988). We believe that Instruction 13 correctly stated the law, and we approve it.

D. *The grant of a new trial.* The trial court granted Reliance's motion for a new trial on the bad-faith claim, stating: "The verdict of $550,000.00 is not reasonably related to actual damages, or the conduct of Defendant, which resulted in actual injury to Plaintiff. Such award is flagrantly excessive and lacking in evidentiary support."

■ In ruling upon a motion for new trial, broad but not unlimited discretion is vested in the trial court, Iowa R.App.P. 14(f)(3), and the grant of a new trial will not be disturbed unless an abuse of discretion is shown. *McConnell v. Aluminum Co. of Am.,* 367 N.W.2d 245, 248 (Iowa 1985). We are more reluctant to interfere with the grant of a new trial than its refusal, Iowa R.App.P. 14(f)(4). Furthermore, we will not find an abuse of discretion unless it is shown that the trial court's discretion was exercised on grounds clearly untenable or to an extent clearly unreasonable. *State v. Brumage,* 435 N.W.2d 337, 341 (Iowa 1989).

■ The trial court's grounds for exercising its discretion are set out above, and we cannot say that its rationale is so unreasonable that the order for new trial constituted an abuse of discretion.

II. *The Slander Claim.*

Reliance contends that Kiner's claim for slander should not have been submitted to the jury because (1) the claim was barred by the statute of limitations, (2) the statement was a privileged communication, and (3) the statement was not published to third parties.

A. *Statute of limitations.* Reliance argues that Kiner's claim for slander is barred by the two-year limitation of Iowa Code section 614.1(2), which begins to run on the date of publication. Kiner's claim of slander relates to three separate publications. In the first, which occurred on May 28, 1982, Reliance's claims supervisor informed a claims processor at Reliance's local agency that Kiner was addicted to drugs and that Reliance was no longer going to make payments to him. On March 9, 1983, the claims supervisor misrepresented to the claims processor that Kiner had refused to go through a drug dependency evaluation.

The final publication was on August 25, 1983. On that date, Reliance's claims supervisor told the local agent that Reliance's "status" had not changed, that Reliance would continue to refuse payment for the medications, and that Kiner would be required to go to a chemical abuse center for an evaluation.

The slander case was first raised when Kiner filed an amendment to his bad-faith petition. This amendment was on January 6, 1988, well beyond two years from the last publication of August 25, 1983. The trial court allowed the amendment to be filed and ruled that, under Iowa Rule of Civil Procedure 89, the amendment would relate back to the original filing date of the bad-faith claim, which was June 11, 1985. These rulings have not been challenged by Reliance.

■ Every publication or repetition of defamatory matter constitutes a claim which is separate and independent from any claims arising out of the original publication. *Bond v. Lotz*, 214 Iowa 683, 687, 243 N.W. 586, 587 (1932). The threshold issue is, therefore, whether the August 25 publication was a republication or repetition of earlier defamatory matters.

For Kiner's slander action to be timely under section 614.1(2), it must be based on the August 25 publication because, as already noted, that is the only publication within the two-year limitation period. Whether the slander action may be based on the August 25 publication, in turn, depends on whether statements by Reliance on that date were slanderous. Kiner says they were. Reliance argues they were not and, in fact, argues that they should be held to be nonslanderous as a matter of law.

■ Whether a publication is understood as defamatory "must be determined by giving to the subject-matter thereof, as a whole, that meaning which naturally belongs to the language used." *Sheibley v. Ashton*, 130 Iowa 195, 198, 106 N.W. 618, 619 (1906). It is for the court to determine whether the words are *capable* of a defamatory meaning, and for the jury to determine whether they were so understood. *Brown v. First Nat'l Bank*, 193 N.W.2d 547, 552 (Iowa 1972). *See Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). The jury is to determine what the hearer understood from the words themselves and the facts and circumstances attending the speaking of them. *Hess v. Fockler*, 25 Iowa 9, 11–12 (1868).

It is not, however, "*necessary* for plaintiff to introduce as witnesses those who heard the words spoken, and prove by them the sense in which they understood them...." *Id.* at 12.

■ A memo relating to the August 25 conversation between Judy Sajka, the Reliance claims manager, and Joetta Deustch, a claims handler for the local Reliance agency, stated:

Talked to Judy S[ajka] at Reliance. Status hasn't changed as far as payments go. He is to go to a Chemical Abuse Center for evaluation before they make any commitment to pay or not. Said to send bill up anyway. JD

The trial court determined that this publication *could* be considered slanderous, and the jury found that it was. In view of the parties' previous conversations regarding Kiner's drug problem, the statement of August 25 that Reliance's "status hasn't changed," and its reference to a chemical dependency evaluation, could be found to be defamatory. The question of whether it was defamatory in fact was for the jury.

B. *Privileged communication.* Reliance contends that the slander action should have been dismissed on the ground of qualified privilege because the statements were made only to persons having an interest in the subject matter and to whom they had a right or duty to communicate them. Kiner responds that the court correctly instructed the jury on qualified privilege, and in any event, Reliance waived any error in the instructions by failing to object to them.

■ The jury rejected the qualified privilege defense as set out in the court's instructions which, without objection, must be considered to be the correct law. *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) (failure to make timely objection to instruction waives right to assert error on appeal; instruction, right or wrong, becomes law of the case).

The jury found against Reliance on this issue, and a contrary finding is not compelled under the record. We find no basis for overturning the jury's rejection of this defense.

C. *Publication to third parties.* Reliance contends that the trial court erred in submitting the slander claim because the statement was not published to third parties. It argues that Deustch, who heard the statements, was an agent of either Kiner or Reliance. (She was an employee of the local insurance agency which wrote the workers' compensation policy for Kiner's employer.) Therefore, no communication or publication to a third party existed. Kiner responds that Sajka's communication to Deustch meets the requirement of publication and also that Reliance waived this argument by failing to raise it in the district court. We agree that the issue was not raised, and we therefore decline to consider it on appeal.

■ D. *Remittitur or new trial on slander claim.* In response to Reliance's motion for a new trial on the slander claim, the trial judge found that the compensatory damages of $75,000 were excessive, but the punitive damages of $150,000 were not. The court stated that the jury's compensatory award "was not the result of passion and prejudice, but merely excessive in nature." It ordered a new trial unless Kiner would consent to a reduction of the judgment for actual damages to $50,000.

A remittitur of $25,000 is difficult to uphold in view of the court's finding that the larger verdict was not the result of passion or prejudice. Furthermore, the court did not find a lack of evidentiary support for the verdict. The fact that the judgment was reduced by only $25,000 and the statement of the court that the verdict was "merely excessive" suggests that the court supplanted its verdict of $50,000 for that of the jury for $75,000. Under the principles discussed in Division I, we conclude that the court's order for remittitur was untenable and therefore an abuse of discretion. We accordingly reverse on that issue.

III. *Instruction on Damages.*

The final issue presented by Reliance is whether the trial court correctly instructed on damages. It argues first that the damage instruction impermissibly allowed the jury to give damages for mental pain and suffering without the showing of physical injury. Reliance, however, failed to object on this issue, and we deem the argument waived.

■ Reliance also complains that the damage instruction permitted Kiner to recover twice for costs and attorney fees, once on the slander claim and once on the bad-faith claim. There is, however, no evidence that this actually occurred. The damage instruction, moreover, provided:

A party cannot recover duplicate damages. Do not allow amounts awarded under one item of damage to be included in any amount awarded under another item of damage.

We must assume the jury followed that instruction. *See Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 110 (Iowa 1986).

For the reasons stated in this opinion, we affirm the trial court's grant of a new trial on the bad-faith claim, reverse its conditional new-trial order on the slander claim, and remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS–APPEAL.