Ken J. REUTER, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
INC., Appellee.

No. 89–1747.

Supreme Court of Iowa.

April 17, 1991.

Edward J. Keane and Daniel L. Flaherty of Margolin, Gildemeister, Willia, Mugan & Keane, Sioux City, for appellant.

Paul J. Yaneff of Yaneff & Cosgrove, Sioux City, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

Ken J. Reuter brought suit against State Farm Mutual Automobile Insurance Company, Inc. (State Farm) for breach of contract, bad faith, and fraud. After all evidence had been received, the court directed a verdict for the insurer on the claims of bad faith and fraud. The jury found for the insured upon the breach of the medical pay provisions of the insurance policy and judgments were entered upon the verdicts. The insured appeals from the court's granting of a directed verdict and judgment. The insurer cross-appeals from the court's admission of certain evidence.

In ruling on a motion for directed verdict, the evidence must be viewed in the light most favorable to the party against whom the motion was made, regardless of whether it was contradicted. Iowa R.App.P. 14(f)(2). Moreover, a court must draw every legitimate inference in aid of the evidence. If reasonable minds could differ on the issue, it should be submitted to the jury. *Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 34 (Iowa 1982). When substantial evidence has been presented in support of each element of a claim, a motion for directed verdict must be denied. *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 187–88 (Iowa 1982).

I. *Background.*

On September 27, 1984, Ken Reuter, an eighteen-year-old college student, was injured when the car he was driving collided head on with a pickup truck driven by Tracy Combs. As a result of the collision, Reuter was taken to St. Luke's Hospital in Sioux City. After examination by Dr. Berger in the emergency room, he was admitted to the hospital for head injury observation. While at the hospital, x-rays were taken, and he was examined by Dr. Opheim. Dr. Opheim found Reuter had suffered a concussion, scalp laceration, acute cervical spine strain and left shoulder strain. X-rays of the cervical spine revealed no evidence of fracture displacement or disfaced changes of the spine. However, a slight reversal of the normal lordotic curve at the level of C–3 was noted. He was dismissed on the second day after admission.

On October 6, 1984, Reuter began receiving chiropractic treatment from Dr. Martin. Dr. Martin had previously provided chiropractic services to Reuter's parents, and his father had recommended that he see a chiropractor for his neck and back pain.

At the time of the accident Reuter was insured under an auto policy issued by State Farm. The policy included medical pay, collision, and uninsured motorist coverage. State Farm determined Combs was uninsured at the time of the accident. On October 30, 1984, State Farm paid Reuter $3000 for release of his uninsured motorist claim and $2250 in settlement of his collision claim. Reuter was advised the medical pay coverage would cover medical ex-

penses including chiropractic care, incurred within three years of the accident.

Reuter continued to receive chiropractic services from Dr. Martin until December of 1985. State Farm paid Dr. Martin for all chiropractic services he provided Reuter between October 6, 1984, and December 26, 1985, in the sum of $599. In May of 1986, Reuter wrote to State Farm advising them that he had completed college and was working full time in Sioux City. He requested that he be permitted to seek chiropractic services from Hagen Chiropractic Clinic. In answer to this request, State Farm's resident claim superintendent advised him

> [y]our policy provides that we will pay reasonable medical expenses for bodily injury caused by accident. We do not choose or direct our insureds to any particular medical provider. We do, however, review expenses submitted as to whether or not they would be considered reasonable and necessary medical expense commensurate with the type of injury received. Should you choose to go to Hagen Chiropractic Clinic, we would review these expenses upon the same criteria.

On May 28, 1986, Reuter began receiving chiropractic services from Hagen Clinic. Dr. Hagen found Reuter had suffered a hyperflexion—hyperextension injury to his neck, a cervical strain in the neck and the middle back area, cervical torticollis, cervicoalgia, lumbosacral sprain and lumbar disc displacement. Hagen Clinic submitted to State Farm a statement for chiropractic services provided to Reuter between May 28, 1986, and September 23, 1986.

The State Farm claims superintendent forwarded the claim and its file to Professional Evaluation Services, P.C. (PES) for review. PES is an independent professional corporation, established in 1980, offering its services primarily to insurance companies. It reviewed over 4000 claims in 1984. On October 30, 1986, PES reported "we cannot verify the necessity of the re-institution of treatment in 5/86 as it would relate to treatment sustained in the injury 1½ years previous." It suggested both Dr.

Martin and Dr. Hagen be asked to complete a supplemental information form. In August of 1987 PES again evaluated the claim after receiving supplemental information and x-rays from Dr. Hagen. PES again was unable to verify the necessity of reinstituting treatment in 1986. However, the report suggests that if the carrier was obligated for reinstitution of treatment, then up to eight weeks' care with an initial examination and filing and up to fifteen office visits would be expected to provide reasonable chiropractic treatment for any lingering problems resulting from the 1984 accident. As suggested, State Farm paid Hagen Clinic the sum of $594 in December of 1987.

In January 1988, State Farm received a letter from the Utilization and Cost Control Review Committee, a peer review committee that is appointed by the Iowa State Board of Chiropractic Examiners. The letter advised State Farm that a review of the chiropractic services provided Reuter had been requested by Dr. Hagen. State Farm responded that it was not requesting review. However, at the request of Dr. Hagen, the committee did review the charges and found the services provided were necessary, reasonable and customary. A copy of this report was furnished to State Farm in April 1988.

Reuter filed suit on July 20, 1988. He was examined at State Farm's request prior to trial by Dr. Dougherty, an orthopedic surgeon. Following this examination and the deposition of both Dr. Dougherty and Dr. Hagen, State Farm again submitted the matter to PES for reevaluation. PES reported it could not verify the necessity of the ongoing and excess treatment. It stated maximum chiropractic improvement would be expected from the treatment received through December of 1986. State Farm then paid, in August of 1989, the sum of $820 to Hagen Clinic for services that were provided Reuter. This left an unpaid balance at the time of trial of $556.

The case proceeded to trial. After both parties had rested, Reuter moved for a directed verdict on both his breach of contract and bad faith claims. His motions

were overruled. State Farm moved for a directed verdict to each of Reuter's claims. The court overruled the motion on the contract claim but granted it on the bad faith and fraud claims. The jury returned a verdict on the contract claim for the amount asked, $556. On appeal, Reuter challenges only the court's ruling on the bad faith and fraud claims.

## II. *Bad Faith.*

### A. Development of First Party Bad Faith Tort Liability.

A growing number of states have recognized tort liability for an insurance company's unreasonable denial of an insurance claim. Although an insurer is normally liable only on its contract, a bad faith failure to pay the insured when the insured event occurs, especially on a fire or medical policy, may subject the insurer to tort liability. *See* P. Keeton, *Prosser & Keeton on Torts* § 92, at 91 of 1988 Supp. (5th ed.1984 and Supp.1988); *see also* Annotation, *Insurer's Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due Under Contracts,* 47 A.L.R.3d 314 (1973).

In 1978 the Wisconsin Supreme Court recognized a cause of action in tort against an insurer for bad faith refusal to honor an insured's claim. *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978). The court acknowledged the tort of bad faith is not the same as a tortious breach of contract. 85 Wis.2d at 685–87, 271 N.W.2d at 374. It is a separate intentional wrong which results from a breach of duty imposed as a consequence of the insurance contract. *Id.* The tort of bad faith only arises when the insurance company intentionally denies or fails to process a claim without a reasonable basis for such action. 85 Wis.2d at 692–94, 271 N.W.2d at 377.

In *Anderson,* the court adopted a two-part test to establish a claim for bad faith. 85 Wis.2d at 690–92, 271 N.W.2d at 376. Under this test, the plaintiff must show the absence of a reasonable basis for denying benefits of the policy *and* the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Id.* There is both an objective and a subjective requirement. The absence of a reasonable basis is an objective element; the insurer's knowledge of the absence is a subjective element. As stated in *Anderson,* under these tests, an insurance company may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied or failed to process or pay a claim without a reasonable basis. 85 Wis.2d at 692–94, 271 N.W.2d at 377.

We adopted the *Anderson* test in *Dolan v. Aid Insurance Co.,* 431 N.W.2d 790 (Iowa 1988). We have recently modified the second part of the test. *Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9, 13 (Iowa 1990). It is sufficient in Iowa to show that the insurer denies a claim knowing or having reason to know that its denial is without basis. *Id.*

### B. "Fairly Debatable."

When considering first party bad faith claims, we have consistently stated that where a claim is "fairly debatable," the insurer is entitled to debate it. *See Dirks v. Farm Bureau Mut. Ins. Co.,* 465 N.W.2d 857, 861 (Iowa 1991); *Kiner v. Reliance Ins. Co.,* 463 N.W.2d at 12; *Kirk v. Farm & City Ins. Co.,* 457 N.W.2d 906, 910 (Iowa 1990); *Dolan v. Aid Ins. Co.,* 431 N.W.2d at 794; *Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100, 111 (Iowa 1986); *Pirkl v. Northwestern Mut. Ins. Ass'n,* 348 N.W.2d 633, 635 (Iowa 1984); *Higgins v. Blue Cross of Western Iowa and South Dakota,* 319 N.W.2d 232, 236 (Iowa 1982); *M–Z Enters., Inc. v. Hawkeye–Sec. Ins. Co.,* 318 N.W.2d 408, 415 (Iowa 1982).

The trial court denied motions for a directed verdict upon the contract claim made by both parties because the court concluded a jury issue was raised as to the necessity and reasonableness of the medical expenses incurred by Reuter.

In the court's ruling upon the motion for a directed verdict on the bad faith claim, the court stated:

[t]his *Dolan* case does place the court in a quandary as it must determine—the court must determine the issue of whether a claim is fairly debatable rather than submit the issue to the jury. Now, actually, submission of such issue (breach of contract) to a jury in and of itself would establish that the issue of proper denial was debatable.... Applying the *Dolan* case to this situation, the court has no alternative than to sustain the defendant's motion for a directed verdict of count II (bad faith) of the plaintiff's petition.

The court's reasoning is similar to that applied by the Alabama Supreme Court in *National Savings Life Insurance Co. v. Dutton,* 419 So.2d 1357 (Ala.1982). After recognizing that when a claim is fairly debatable, the insured is entitled to debate it, the Alabama court stated:

> [i]n the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.

In *M–Z Enterprises,* 318 N.W.2d at 415, we observed that the insurer's defense on the contract claim was "fairly debatable" as the trial court must have determined when it submitted the issue to the jury. Likewise, in *Higgins,* 319 N.W.2d at 236, we stated that "the evidence adduced by defendants in support of their defense of misrepresentation clearly made plaintiff's contract claim 'fairly debatable,' and trial court must have determined this was so when it denied plaintiff's motion for a directed verdict on that claim."

Not all states follow the *Dutton* rule. *See, e.g., Fowler v. Great Am. Ins. Co.,* 124 Ariz. 111, 602 P.2d 492 (App.1979) (court concluded the nature of the proofs is sufficiently different so that the failure to prove one would not necessarily mean the failure to prove the other). Even the Alabama court does not always apply the directed verdict rule. *See Thomas v. Principal Fin. Group,* 566 So.2d 735, 749–50 (Ala. 1990).

■ We do not agree that the mere denial of a plaintiff's motion for a directed verdict automatically establishes that the issue is "fairly debatable." The trial court should carefully review the facts and the particular circumstances in making its determination as to what is the precise issue or issues that are debatable.

### C. Insurer's Duty to Investigate Claim.

Reuter argues State Farm must properly investigate and evaluate the medical expense claim before it can urge the claim is "fairly debatable." In response, State Farm cites *Pirkl* where in a first-party case, we said "the insurer has no clearly defined duty to investigate and may require the insured to present adequate proof of loss before paying the claim." *Pirkl,* 348 N.W.2d at 633.

■ If an objectively reasonable basis for denial of a claim actually exists, the insurer, as a matter of law, cannot be held liable for bad faith. Thus, an insurer's intentional, reckless, or negligent failure to investigate or evaluate a claim is only an element by which the insured may prove that no lawful basis for refusal existed. The insurer's "subpar" investigation cannot in and of itself sustain a tort action for bad faith. The lack of proper investigation and evaluation is significant in proving the crucial element of a bad-faith tort, namely knowledge by the insurer of the lack of a debatable reason for denial. *See Gulf Atl. Ins. Co. v. Barnes,* 405 So.2d 916, 924 (Ala.1981); *State Farm Fire & Casualty Co. v. Balmer,* 891 F.2d 874, 877 (11th Cir.1990), *aff'g, State Farm Fire & Casualty Co. v. Balmer,* 672 F.Supp. 1395 (M.D. Ala.1987). Although subjective bad faith may be inferred from an insurer's flawed investigation, an improper investigation, standing alone, is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the

claim. *Pace v. Insurance Co. of N. Am.*, 838 F.2d 572, 584 (1st Cir.1988).

### D. Disposition.

■ Upon our review of the record, we agree with the trial court that Reuter's claim was "fairly debatable." There was an objectively reasonable basis for not paying the claim. State Farm had received and processed all of Reuter's medical claims for 1984 and 1985. Dr. Martin had submitted a medical report together with his itemized statement for $439 in March of 1985. This report estimated June 1 as the date of termination of treatment and the estimated costs of further treatment at sixty to seventy-five dollars. In February of 1986 Dr. Martin submitted a second statement for $160 for chiropractic services. The statements submitted by Dr. Martin disclosed charges for fifteen office calls during the last three months of 1984, six office calls during the first three months of 1985, and nine office calls during the last nine months of 1985. All medical claims for 1984 and 1985, including Dr. Martin's claim for chiropractic care, were paid in full. State Farm had reason to believe that Reuter had received most of the chiropractic services for injuries caused by the accident.

State Farm received the Hagen Clinic statement for chiropractic services in October of 1986. The statement requested payment of $1320 based upon thirty-nine separate treatments between May 28 and September 2, 1986. The claims superintendent for State Farm reviewed the Reuter file. The file included the medical reports of Dr. Berger and Dr. Opheim, the hospital x-ray report, and the attending physician report from Dr. Martin. The claims superintendent reasonably concluded further evaluation of the claim should be made, and the file was forwarded to PES for independent evaluation.

In its evaluation, PES expressed its opinion as to reasonable and customary chiropractic services based upon the treating chiropractic physician's diagnosis. The written reports contained the rationale for its opinions. The claims superintendent re-lied upon the PES professional opinions and made payments on the Hagen Clinic claim as recommended.

Reuter claims State Farm did not properly investigate and evaluate his claim. Evidence was received that Hagen's claims were denied without reexamination of Reuter and without examination of available x-rays; the reports made by PES were less than complete; there was an unreasonable delay in securing supplemental information and in advising Dr. Hagen of the results of PES's evaluation and that State Farm refused to cooperate with the peer review committee. He argues State Farm must properly investigate and evaluate the claim before asserting it had made a good faith decision on whether to pay the claim. We reject this argument. If an insurer has an objectively reasonable basis for denying the claim, then the insured has no bad faith claim.

We have reviewed the record to determine if substantial evidence was presented to establish that State Farm had no reasonable basis for refusing to pay the Hagen Clinic claim in full. We conclude Reuter has failed to meet his burden. The court did not err in granting a directed verdict to State Farm on the bad faith claim.

### III. *Fraud Claim.*

■ Reuter alleges that State Farm fraudulently concealed Dr. Martin's medical report at the time he released his uninsured motorist claim and that the insurer misrepresented the policy provisions regarding medical payments. In defense, State Farm argues that there is no evidence the medical report was withheld or that it was in any way relevant to the medical pay claim made by Reuter. We agree. Dr. Martin was Reuter's doctor. The written report by Dr. Martin was submitted long after the uninsured motorist claim had been settled. There is no evidence State Farm misrepresented the terms of the medical pay policy provisions. The letter received by Reuter in 1986 clearly expressed the terms of payment and called to his attention State Farm's right to review the Hagen Clinic bill and to deter-

mine if it was reasonable and necessary. Reuter testified that he was not told anything different from what was expressed in the letter. The court did not err in granting a directed verdict to State Farm on the fraud claim.

Because we affirm the trial court's ruling on State Farm's motion for a directed verdict, it is not necessary to address the issues raised in its cross-appeal.

AFFIRMED.