George W. CHADIMA, Trustee of the George Milton Chadima and Lillian Esther Chadima Trust; Swisher Trust & Savings Bank, as Trustee of the George Milton Chadima and Lillian Esther Chadima Trust; George W. Chadima, Executor of Estate of George Milton Chadima; Lillian Esther Chadima, Executor of Estate of George Milton Chadima, Appellants/Cross–Appellees,

v.

NATIONAL FIDELITY LIFE INSURANCE COMPANY, Appellee/Cross–Appellant,

State of Iowa, Civil Reparations Trust Fund, Intervenor–Appellee/Cross–Appellant.

Nos. 94–2056, 94–2156 and 94–2157.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1994.

Decided April 26, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied June 14, 1995.

Kevin H. Collins, Cedar Rapids, IA, argued for appellant (James D. Hodges, on brief).

Richard E. Mull, Ames, IA, argued for appellee the State of Iowa. John DeDoncker, Davenport, IA, argued for appellee Nat. Fidelity. (Bonnie Campbell, Craig Kelinson and Thomas J. Shields, on brief).

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

This diversity case presents the question of whether a judge or jury should decide whether an insurer had a reasonable basis for denying a claim in a first-party bad faith action. Cases from the Iowa Supreme Court go both directions. The magistrate judge granted the insurer's post-trial motion for judgment notwithstanding the verdict, concluding that under Iowa law, whether the insurer's position is fairly debatable is a question of law. Because there was substan-

---

tial evidence that the insurer, National Fidelity Life Insurance Company, had a reasonable basis for denying the claim of the insured, the estate of George M. Chadima, the judge determined that the insurer's position was fairly debatable, and that the insurer was entitled to judgment notwithstanding the verdict. The estate of George M. Chadima appeals, and we reverse.

National Fidelity Life Insurance Company issued a life insurance policy to George M. Chadima on January 21, 1986. The policy was a declining death benefit policy. In April of 1989, Chadima contacted National Fidelity complaining that he thought he had purchased a $100,000 fixed death benefit policy, rather than a declining death benefit policy. He asked to convert his policy to a $100,000 fixed death benefit policy. National Fidelity refused, but offered to issue a new policy with a $90,000 fixed death benefit. National Fidelity instructed Chadima to return the original policy with an executed change of policy form. On July 11, 1989, Chadima forwarded the policy and a change of policy form to National Fidelity. The request form provided that "the requested change(s) shall not take effect until approved in writing by the Company."

Chadima died October 26, 1989, before National Fidelity had changed or reissued the policy. At that time, the declining-benefit policy had a value of $134,973.20.

Chadima's estate filed a claim for benefits. Evidence at trial showed that a claims manager reviewed the policy file and determined that National Fidelity owed $136,692.72 because the original policy was still in effect. Nevertheless, National Fidelity tendered a check in the amount of $91,423.97, representing the $90,000 fixed death benefit requested by Chadima with interest.

Chadima's estate demanded payment under the original policy. After correspondence between the estate's attorney and National Fidelity, and pursuant to directions from its associate general counsel, National Fidelity acknowledged the original policy was still in effect and sent the estate an additional check for $46,072.89. Both checks included language releasing all claims against National Fidelity. The Chadima estate insisted on a written agreement allowing them to negotiate the checks without waiving any claims. Unable to reach a written agreement, National Fidelity orally instructed the estate to cross out the release language and cash the checks. The estate refused, afraid that National Fidelity was trying to mislead them.

Chadima's estate filed this action, asserting claims of first-party bad faith, breach of contract, and fraud.[1] The parties tried the case before a magistrate judge. The magistrate judge initially concluded that under the most recent Iowa Supreme Court authority, *Wetherbee v. Economy Fire & Casualty Company*, 508 N.W.2d 657, 661 (1993), the court should decide as a matter of law whether National Fidelity had a reasonable basis for denying Chadima's claim. *Chadima v. National Fidelity Life Ins. Co.*, 848 F.Supp. 1418, 1431 (S.D.Iowa 1994). The court proposed an instruction informing the jury that National Fidelity lacked a reasonable basis for denying the claim. Both sides objected to the instruction. Chadima's counsel argued that the jury, as the trier of fact, should decide whether National Fidelity had a reasonable basis for denying the claim. National Fidelity argued that the court should rule that National Fidelity had a reasonable basis for denying the claim, and thus, there was no first-party bad faith as a matter of law. National Fidelity agreed that if the court declined to find that National Fidelity reasonably denied the claim, then the jury should decide the question.

Reserving final judgment until post-trial motions, the magistrate judge submitted to the jury the question of whether National Fidelity had a reasonable basis for denying the claim. The jury found in Chadima's favor, awarding $34,029 in compensatory damages on the breach of contract and first-party bad faith claims, and $100,000 in punitive

---

1. Chadima's estate filed this action in Iowa state court, and National Fidelity removed the action based on diversity of citizenship. The parties consented to a jury trial before a United States magistrate judge.

damages on the first-party bad faith claim.[2]

■ On post-trial motions, the magistrate judge determined that the Iowa Supreme Court decision in *Wetherbee* required him to determine as a matter of law whether the insurer's position was fairly debatable. *Chadima*, 848 F.Supp. at 1433. In *Wetherbee*, the Iowa Supreme Court stated unequivocally: "[w]hether a claim is fairly debatable in any given situation is appropriately decided by the court as a matter of law." 508 N.W.2d at 662.[3] The magistrate judge granted judgment notwithstanding the verdict to National Fidelity on Chadima's bad-faith claim, concluding that substantial evidence existed on both sides of the question of whether National Fidelity had a reasonable basis for denying the claim, and, therefore, National Fidelity's position was fairly debatable as a matter of law. *Chadima*, 848 F.Supp. at 1431–32 & n. 14. Chadima's estate appeals, and the question before us is whether the court or jury should decide whether a claim is fairly debatable.[4]

Chadima argues that the district court correctly recognized a factual dispute as to whether National Fidelity had a reasonable basis for denying Chadima's claim. Because of the factual dispute, Chadima contends the court correctly submitted the issue to the jury, but erred when it later entered judgment as a matter of law for National Fidelity.

Chadima argues that *Wetherbee* does not control because, in that case, the insurer declined coverage based on a legal issue. Chadima then argues that when, as here, the insurer denies coverage based on a factual dispute, the issue must go to the jury.

■ We review the magistrate judge's determination of Iowa law de novo, giving it no deference. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991). The district court's decision to enter judgment notwithstanding the verdict is a ruling of law that we also review de novo.[5] *Nelson v. Production Credit Ass'n of the Midlands*, 930 F.2d 599, 603 (8th Cir.), *cert. denied*, 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 438 (1991).

The Iowa Supreme Court first recognized the intentional tort of first-party bad faith in *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790 (Iowa 1988). To establish first-party bad faith, an insured must show that: (1) the insurer had no reasonable basis for denying benefits under the policy; and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim.[6] *Id.* at 794. The court explained that when "a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Id.* (citing *M–*

---

2. In response to a special interrogatory submitted under Iowa Code Section 668A.1(1)(b), the jury also found that National Fidelity's conduct was not specifically directed at Chadima. Chadima filed a motion for entry of judgment pursuant to Rule 50 of the Federal Rules of Civil Procedure seeking to set aside this jury finding. The court granted the State of Iowa's motion to intervene, but determined the question moot after it set aside the punitive damage award. The State filed a brief with this court asking that if we reinstate the punitive damage award, we should remand the issue to the magistrate judge or uphold the jury finding.

3. The district court for the Southern District of Iowa recently cited this statement of Iowa law in *Weber v. State Farm Mutual Automobile Insurance Co.*, 873 F.Supp. 201, 205 (S.D.Iowa 1994). That case, however, did not address the issue before this court. *Id.*

4. National Fidelity cross appeals, arguing that the magistrate judge erred by refusing to grant judgment as a matter of law on the breach of contract claim. National Fidelity contends that

we should reverse the jury verdict on the contract claim because no evidence supported breach of a specific term of the insurance contract, and because the estate failed to mitigate damages by refusing to cash the checks. In light of our decision on the first-party bad faith claim, we need not consider these arguments.

5. There is a question as to whether we should apply state or federal law standards to motions for a judgment notwithstanding the verdict in a diversity case. *See Keenan v. Computer Assoc. Int'l*, 13 F.3d 1266, 1269 n. 3 (8th Cir.1994). Because the standards under federal or Iowa law are the same, the question has no significance to this case.

6. The Iowa Supreme Court modified the second part of the test in *Kiner v. Reliance Insurance Co.*, 463 N.W.2d 9 (Iowa 1990). It is now sufficient to show that the insurer denies a claim knowing or having reason to know that its denial is without a reasonable basis. *Id.* at 13.

*Z Enterprises v. Hawkeye–Security Ins. Co.*, 318 N.W.2d 408, 415 (Iowa 1982)).

Chadima contends that *Wetherbee* did not change existing law, but merely stated the obvious proposition that when only the legal construction of a policy is at issue, the question of the insurer's reasonableness should be decided as a matter of law. Chadima contends that under Iowa law, a factual dispute as to the reasonableness of the insurer's denial is an issue for the jury, as shown by *Kiner v. Reliance Insurance Co.*, 463 N.W.2d 9 (Iowa 1990); and *Nassen v. National States Insurance Co.*, 494 N.W.2d 231 (Iowa 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993).

In *Kiner*, the Iowa Supreme Court considered the insurer's argument that the trial court erred by submitting the bad faith claim to the jury because the claim was fairly debatable as a matter of law. 463 N.W.2d at 12. The insurer had reimbursed its insured for pain medication for eight years, but then refused reimbursement, contending that the insured had a drug dependency problem. *Id.* at 11. The court determined that a reasonable fact finder could conclude that the insurer failed to exercise an honest and informed judgment in denying the claim, and thus, could conclude that the insurer's denial was not fairly debatable. *Id.* at 12. The court concluded the issue was "one for the jury, not for the court as a matter of law." *Id.* at 12.

Likewise, in *Nassen,* the insurer argued the trial court erred by failing to direct a verdict on the bad faith claim. 494 N.W.2d at 236. The insurer pointed to the insured's failure to disclose two allegedly preexisting health conditions as proof that the insured's claim was fairly debatable as a matter of law. *Id.* The court concluded that the insurer had no proof that the insured intentionally misrepresented health information on her insurance application because the alleged preexisting conditions were only suspected initial diagnoses which never were confirmed

during her subsequent hospital stay. *Id.* "The 'fairly debatable' test approved in *Dolan* require[s] [the insured] to establish to the satisfaction of a reasonable fact finder that [the insurer's] decision to rescind her policy was not based on an honest and informed judgment." *Id.* The court dismissed the insurer's explanation for denying the claim and stated, "[u]nder the circumstances, the question of bad faith was for the jury to decide." *Id.*

■ National Fidelity refutes Chadima's interpretation of Iowa law, contending that the fairly debatable question is a threshold legal inquiry. National Fidelity argues that the trial court must first determine that a claim cannot be fairly debated before submitting the bad faith issue to the jury.[7] National Fidelity argues that *Kiner* and *Nassen* support its interpretation of Iowa law and demonstrate that the jury can decide if the insurer acted with bad faith only after the judge decides that the insurer's denial was not fairly debatable.

Besides *Wetherbee,* National Fidelity cites several cases to demonstrate this two-part inquiry. First, in *Reuter v. State Farm Mutual Automobile Insurance Co.*, 469 N.W.2d 250 (Iowa 1991), the Iowa Supreme Court concluded that the insurer's denial was fairly debatable as a matter of law. *Id.* at 255. The insured had been injured in a car accident, and the insurer initially paid for chiropractic care. *Id.* at 251–52. Some months later, the insured filed another claim for chiropractic care, and the insurer denied coverage. *Id.* Because the first doctor had indicated further treatment would be minimal, and a consultant questioned the need for additional treatment, the court concluded the insurer had an "objectively reasonable basis" for its denial, and the claim was fairly debatable as a matter of law. *Id.* at 255. Similarly, in *Central Life Insurance Co. v. Aetna Casualty & Surety Co.*, 466 N.W.2d 257 (Iowa 1991), the court reversed a jury's de-

---

7. The American Council of Life Insurance filed an amicus curiae brief in support of National Fidelity. The Council argues that Chadima's claim is fairly debatable because of a patent ambiguity in the insurance documents executed by Chadima. The Council contends that the insurance policy differs from the change of policy form because the policy provides that any subsequent changes to the policy take effect immediately upon receipt by National Fidelity. We cannot evaluate this argument, as the insurance policy was not admitted as evidence at trial.

termination of bad faith, concluding that the claim was fairly debatable as a matter of law. *Id.* at 263. The insurer reimbursed the insured for a fire loss based on two appraisals. *Id.* Although the insurer unsuccessfully attempted to refute the insured's higher appraisal, the court reiterated that the insurer had the right to fairly debate the appraisal award. *Id.* Accordingly, the court determined the insurer had an objectively reasonable basis for its denial, and judgment for the insurer should be entered as a matter of law. *Id.* Finally, National Fidelity contends that *Dirks v. Farm Bureau Mutual Insurance Co.*, 465 N.W.2d 857 (Iowa 1991), confirms the two-part inquiry. In *Dirks*, an insured sued for failure to pay underinsured motorist benefits. *Id.* at 859. The Iowa Supreme Court affirmed the trial court's grant of judgment notwithstanding the verdict on the bad faith claim, concluding there was not substantial evidence to support the jury's finding that the insurer lacked a reasonable basis for denying the insured's claim. *Id.* at 862. The court observed that the insurer initially denied the claim for several valid reasons. *Id.* at 861–62. The insurer received conflicting information about the circumstances of the accident, and the police officers and reconstruction experts failed to confirm where it occurred. For these reasons, the court affirmed the trial court's ruling that the insured's claim was fairly debatable, and thus, the insured did not act in bad faith as a matter of law. *Id.* at 862.

Although the statement in *Wetherbee* that whether a claim is fairly debatable is a question of law for the court to decide is inconsistent with statements in *Kiner* and *Nassen,* we do not believe the cases are irreconcilable. *Wetherbee* can be read as giving the trial court the opportunity to decide as a matter of law in the appropriate circumstances whether the insurer had a reasonable basis for denying the claim, but not mandating the court to do so. For example, the insurer in *Wetherbee* denied the insured's loss of consortium claim based on its interpretation of the governing policy and Iowa's underinsured motorist statute. 508 N.W.2d at 658–59. The trial court concluded that no coverage existed under the insurance policy, and thus, as a matter of law, the insurer could not be liable for bad faith. *Id.* at 661.

The procedural posture of this case is more like that in *Kiner* and *Nassen.* In those cases, the parties disputed whether the insurer had a reasonable basis for denying the claim. Likewise, National Fidelity claimed to have made an honest mistake based on confusion, while Chadima painted a picture of an outright attempt to short change the estate by almost $50,000. Evidence supported both stories, creating a genuine issue of material fact as to whether National Fidelity had a reasonable basis for denying the claim.

The cases cited by National Fidelity do not require the court to first determine as a matter of law whether the insured's position is fairly debatable. National Fidelity's interpretation of Iowa law as requiring the court to first decide whether the insurer had an objectively reasonable basis for denying a claim is really only the flip-side of whether the insured has met its burden of producing evidence that the insurer has no reasonable basis for denying the claim. The cases cited by National Fidelity hold that the insurer was entitled to judgment as a matter of law because the insured produced no evidence upon which a jury could find that the insurer lacked a reasonable basis for denying the claim. *See, e.g., Reuter,* 469 N.W.2d at 255 (insurer denied claim based on physician and consultant reports); *Central Life Ins. Co.,* 466 N.W.2d at 263 (insurer denied claim based on appraisal); *Dirks,* 465 N.W.2d at 862 (insurer denied claim based on conflicting accident reports); *see also Dolan,* 431 N.W.2d at 794–95 (court focused on insurer's investigation of the claim and distinguished case from situation in which insurer denies a claim without an investigation or evaluation). When there is no evidence from which a reasonable juror could make a necessary finding, the insurer is entitled to judgment as a matter of law. *See Dace v. ACF Indus. Inc.,* 722 F.2d 374, 375–76 (8th Cir.1983) (setting forth standard for directed verdict and j.n.o.v.). Whether evidence is sufficient to create an issue of fact for the jury to decide is a question of law. *Nelson,* 930 F.2d at 604, n. 6.

A careful reading of *Central Life* also supports our interpretation of Iowa law. In *Central Life,* the court set aside the jury's verdict on the bad faith claim based on the trial court's jury instruction which prevented the jury from considering the reasonableness of the insurer's actions. 466 N.W.2d at 263. Although the court went on to conclude that the trial court should have directed a verdict for the insurer, it did so because the insured failed to prove that the insurer lacked a reasonable basis for its action, not because the court was required to decide the reasonableness of the insurer's denial. *Id.*[8]

If the insurer has an "objectively reasonable" explanation for its denial, the insurer may be entitled to summary judgment or a directed verdict on a bad faith claim. In such a case, the reasons supporting the insurer's denial cannot be the subject of a genuine factual dispute. Otherwise, and under National Fidelity's interpretation of Iowa law, an insurer could avoid bad faith liability simply by relying on the after-the-fact explanation of its own claims personnel.

The evidence set forth in the Magistrate judge's opinion establishes a genuine issue of material fact as to whether National Fidelity had a reasonable basis for denying Chadima's claim. Chadima's estate met its burden of producing sufficient evidence from which a reasonable jury could conclude that National Fidelity had no reasonable basis for denying the claim. Therefore, the issue was for the jury to decide, and the magistrate judge erred by directing a verdict for National Fidelity on the bad faith claim. This said, we conclude that the jury's finding that National Fidelity acted in bad faith is sufficiently supported by the evidence. *See Keenan v. Computer Assoc. Int'l, Inc.,* 13 F.3d 1266, 1269 (8th Cir.1994) (judgment as a matter of law appropriate only when all of the evidence points one way and there is no reasonable inference sustaining the position of the non-moving party). The issues raised by Chadima and the State of Iowa as to the apportionment of punitive damages are best addressed by the trial judge.

We reverse and remand with directions to reinstate the jury verdict against National Fidelity on Chadima's first-party bad faith claim and for further proceedings consistent with this opinion.

---

8. Our interpretation of Iowa law is consistent with other decisions interpreting other states' laws. *See, e.g., American States Ins. v. State Farm Ins.,* 6 F.3d 549, 552–53 (8th Cir.1993) (under South Dakota law, if substantial evidence exists which would allow reasonable minds to differ as to whether the insurer's action was fairly debatable, the case must go to the jury);

*Bilden v. United Equitable Ins. Co.,* 921 F.2d 822, 827–28 (8th Cir.1990) (applying North Dakota law and rejecting insurer's argument that trial court erred by failing to decide "fairly debatable" question as a matter of law); *Lange v. Penn Mut. Life Ins. Co.,* 843 F.2d 1175, 1181–82 (9th Cir. 1988) (same result, applying Arizona law).