**IN THE COURT OF APPEALS OF IOWA**

No. 18-2022
Filed August 7, 2019

**DARREN SLEISTER,**
        Plaintiff-Appellant,

**vs.**

**STATE FARM FIRE AND CASUALTY COMPANY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, David May, Judge.


        Darren Sleister appeals from the district court's orders granting the defendant's motion for judgment notwithstanding the verdict on his breach-of-contract claim and dismissing his bad-faith claim.  **AFFIRMED.**


        Kenneth R. Munro of Munro Law Office, P.C., Des Moines, for appellant.

        Guy Cook and Adam Zenor of Grefe & Sidney, P.L.C., Des Moines, for appellee.


        Considered by Potterfield, P.J., and Bower and Greer, JJ.  May, J., takes no part.

**GREER, Judge.**

In 2016, Darren Sleister entered into a "house flipping" venture with Georgios Symeonidis after seeing Symeonidis's property listing. Under their agreement, Symeonidis would own the property and act as general contractor during the rehab, Sleister would pay for labor and materials, and Sleister would retain the net proceeds from the sale of the fully-remodeled property. On July 19, Symeonidis purchased homeowner's insurance for the property with $100,800 in dwelling coverage from State Farm Fire and Casualty Company (State Farm). Symeonidis was the named insured as the property owner, and Sleister was named as an additional insured.[1] A State Farm underwriting representative took photographs of the property on July 29, showing the condition of the home to be extremely poor. A municipal sign posted on the door declared the property a public nuisance unsafe or unfit for human occupancy.

Symeonidis hired a subcontractor to work on the roof, and Sleister expected the subcontractor would only remove and replace the shingles and sheathing. On August 10, the subcontractor removed the entire roof, including the trusses, leaving the exposed home without a tarp or other protection from the elements. A rainstorm began later that day, dumping water into the now-roofless structure and destroying the interior of the home.

On August 11, State Farm was notified of the property damage. A claims specialist did not inspect the property until August 25. By that time, most of the internal walls and flooring of the home had been removed. The claims specialist

---

[1] Neither Sleister nor Symeonidis ever lived in the home. At the time of trial, it was unknown where Symeonidis lived.

took photographs of the property, but he was unable to confirm what damage was attributable to the rainstorm. Sleister maintains that because State Farm waited weeks from the date of the damage to inspect the property, the walls and floors of the home deteriorated to the extent that they had to be removed before the inspection; however, the materials remained piled around the property or in the dumpster on site.

On September 13, State Farm sent Symeonidis a letter denying coverage under the policy, stating, "We are denying coverage for this claim based [on] your failure to comply with the conditions of the policy. You have a duty under the policy to allow us to inspect the damage prior to the demolition or commencement of repairs."

The policy requires the following duties of the insured after a loss:

> a. give immediate notice to us or our agent. . . . ; Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;
> b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;
> c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
> d. as often as we reasonably require:
>   (1) exhibit the damaged property;
>   (2) provide us with records and documents we request and permit us to make copies;
>   (3) submit to and subscribe, while not in the presence of any other insured:
>     (a) statements; and
>     (b) examinations under oath; and

(4) produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

Sleister sued State Farm for breach of contract, negligence, breach of fiduciary duty, and bad faith. The district court granted summary judgment on the counts relating to negligence, breach of fiduciary duty, and bad faith. The case was tried to a jury on the breach-of-contract claim.

At the trial, Sleister submitted documentation that he spent $95,000 on the remodeling project before he abandoned it when this dispute could not be resolved. He believed the property was worth more than $95,000 on the day before the storm. State Farm calculated the actual cash value of the property was $9553.65 prior to the loss. The assessed value of the structure pre-remodel was $4100.

Kim Brown, a claims team manager with State Farm, testified that the initial reason for the denial of the claim was the insureds' failure to "exhibit" the damage. She defined "exhibiting the property" as allowing State Farm "to inspect the

damage." The policy language requires the insureds to "exhibit the damaged property" to State Farm "as often as we reasonably require." Brown also addressed other conditions precedent the insureds did not meet, including (1) not protecting the structure from further damage or loss; (2) failing to provide an inventory of damaged personal property; and (3) failing to submit a sworn proof of loss within sixty days of the loss.

On August 29, 2018, the jury found State Farm had breached the contract and awarded Sleister $85,800 in damages. State Farm then filed post-trial motions and specifically requested judgment notwithstanding the verdict (JNOV). The district court granted State Farm's motion for JNOV, entered judgment for State Farm, and dismissed the case. On appeal, Sleister asserts the evidence is sufficient to prove he was entitled to coverage and the damages awarded. He also appeals the ruling granting summary judgment on his bad-faith claim.

"We review the [district] court's grant of a motion for directed verdict for correction of errors of law." *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 106 (Iowa 1995). Our review "is limited to those grounds raised in the directed verdict motion." *Lala v. Peoples Bank & Tr. Co.*, 420 N.W.2d 804, 806 (Iowa 1988). We will "view the evidence in the light most favorable to the nonmoving party" to "decide whether the trial court correctly determined that there was insufficient evidence to submit the case to the jury." *Id.* We will also "tak[e] into consideration every legitimate inference that may fairly and reasonably be made." *Wiesler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 448–49 (Iowa 1995). "A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence to support each element of the plaintiff['s] claim[]." *Id.* at 449.

Under Iowa law, a party claiming entitlement to coverage under an insurance policy must prove compliance with the policy's terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye-Sec. Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson v. Hawkeye-Sec. Ins. Co.*, 106 N.W.2d 86, 91 (Iowa 1960). The insured may meet this burden of proof by showing either: (1) substantial compliance with the condition precedent; (2) the failure to comply was excused or waived; or (3) the failure to comply was not prejudicial to the insurer. *Am. Guar.*, 467 N.W.2d at 228; *Henderson*, 106 N.W.2d at 92. When conditions are not met, prejudice to the insurer is presumed unless the insured can show substantial compliance. *Am. Guar.*, 467 N.W.2d at 228.

Upon review, we agree with the district court's detailed and well-reasoned opinion that Sleister failed to comply with the requirements of the insurance policy. Accordingly, we affirm the order granting JNOV to State Farm and dismissing the action under Iowa Court Rule 21.26(1)(d) ("The record of the proceeding includes an opinion of the court or agency whose decision is being reviewed, the opinion identifies and considers all the issues presented, and the appellate court approves of the reasons and conclusions in the opinion.").

Sleister also argues that the district court erred when it dismissed his bad-faith claim. In Iowa, a plaintiff may bring a common law bad-faith action when an insurer "intentionally denies or fails to process a claim without a reasonable basis for such action." *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991). Based on our conclusion that Sleister and Symeonidis did not

substantially comply with the conditions precedent to coverage, we also affirm the grant of summary judgment on Sleister's bad-faith claim.

**AFFIRMED.**